Robin LUCKETT as Special Administrator of the
Estate of Tywanda Luckett, Tyquone Luckett,
Joe Bohannon, Shenara Bohannon minor(s) by
their Guardian ad Litem, J. Michael End and
State of Wisconsin Department of Health and
Family Services, Plaintiffs-Respondents,

v.

Aaron C. BODNER, M.D., The Medical Protective
Company, Aurora Sinai Medical Center and Phy-
sicians Insurance Company of Wisconsin, Inc.,
Defendants-Appellants-Petitioners,

PHYSICIANS INSURANCE COMPANY OF WISCONSIN, INC.,
Prithipal S. Sethi, M.D., Medical College of Wis-
consin Affiliated Hospitals, Inc. and Injured Pa-
tients & Families Compensation Fund,
Defendants-Co-Appellants-Petitioners,

David Paul ALTMAN, M.D. and Wisconsin Patients
Compensation Fund, Defendants.

Supreme Court

*No. 2007AP308. Oral argument January 7, 2009.
—Decided July 7, 2009.*

2009 WI 68

(Also reported in 769 N.W.2d 504.)

For the defendants-appellants-petitioners, Aaron C. Bodner, M.D. and Physicians Insurance Company of Wisconsin, Inc., there were briefs by *Paul H. Grimstad, Ryan R. Graff,* and *Nash, Spindler, Grimstad & McCracken,* Manitowoc, and oral argument by *Scott L. Howie* (Pro Hac Vice) and *Pretzel & Stouffer, Chartered,* Chicago, Ill.

For the defendants-co-appellants-petitioners, Prithipal S. Sethi, M.D., Medical College of Wisconsin Affiliated Hospitals, Inc. and Physicians Insurance Company of Wisconsin, Inc., there were briefs by *Steven P. Sager* and *Sager, Colwin, Samuelsen & Associates, S.C.,* Fond du Lac, and oral argument by *Steven P. Sager.*

For the defendants-appellants-petitioners, Aurora Sinai Medical Center and The Medical Protective Company, and the defendants-co-appellants-petitioners, Injured Patients & Families Compensation Fund, there were briefs by *Lori Gendelman, Laurie J. McLeRoy,* and *Otjen, Van Ert & Weir, S.C.,* Milwaukee, and *Maria K. Schneider* and *Gutglass, Erickson, Bonville & Larson,* Milwaukee, and oral argument by *Scott L. Howie* (Pro Hac Vice) and *Pretzel & Stouffer, Chartered,* Chicago, Ill.

For the plaintiffs-respondents there was a brief by *J. Michael End, Jerome A. Hierseman,* and *End, Hierseman & Crain, LLC,* Milwaukee, and oral argument by *J. Michael End.*

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. The defendants (physicians, hospitals, and insurers)[1] seek review of an unpublished decision of the court of appeals affirming an order of the Circuit Court for Milwaukee County, Christopher R. Foley, Judge,[2] in favor of the plaintiffs.[3] The circuit court granted the plaintiffs'

[1] There are three groups of defendants: Aaron C. Bodner, M.D. and Physicians Insurance Company of Wisconsin, Inc.; Aurora Sinai Medical Center, Inc., The Medical Protective Company, and Injured Patients and Families Compensation Fund; Prithipal S. Sethi, M.D., Medical College of Wisconsin Affiliated Hospitals, Inc., and Physicians Insurance Company of Wisconsin, Inc. Each group filed its own briefs. We generally treat the defendants as a single entity and, when addressing the defendants' arguments, do not always state which defendants proffer which arguments.

[2] *Luckett v. Bodner,* No. 2007AP308, unpublished slip op. (Wis. Ct. App. Apr. 22, 2008).

[3] The plaintiffs are Robin Luckett as Special Administrator of the Estate of Tywanda Luckett; Tyquone Luckett, Joe Bohannon, and Shenara Bohannon, minors, by their Guardian ad Litem, J. Michael End; and State of Wisconsin Department of Health and Family Services.

motion under Wis. Stat. § 804.11(2) (2005–06)[4] to withdraw three admissions that the plaintiffs made in response to the defendants' request for admissions. The court of appeals affirmed the order of the circuit court.

¶ 2. The single issue presented for our review is whether the circuit court erroneously exercised its discretion in granting the plaintiffs' motion to withdraw the admissions that the plaintiffs made in response to the defendants' request.

¶ 3. The circuit court permitted the plaintiffs to withdraw three different admissions relating to whether Tywanda Luckett was in a persistent vegetative state. The first and third admissions concern Ms. Luckett's condition during the period from July 22, 2005, to October 2, 2005. The second admission concerns Ms. Luckett's condition during the period from September 29, 2000, to July 22, 2005.

¶ 4. The plaintiffs now do not wish to withdraw their first and third admissions. In their brief and during oral argument to this court, they stated that their affirmative responses to the defendants' first and third requests to admit are correct. In other words, the plaintiffs admit that Ms. Luckett was in a persistent vegetative state on July 22, 2005—the date of the plaintiffs' admissions—and that Ms. Luckett's persistent vegetative state was permanent on July 22, 2005, persisting until her death in October 2005.

¶ 5. The plaintiffs now seek to withdraw only their admission in response to the second request for admissions, namely that Ms. Luckett was in a persistent vegetative state from the time that she entered Silver Spring Health and Rehabilitation Center on

---

[4] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

September 29, 2000, until July 22, 2005, the date of the plaintiffs' admissions. The second admission covers the largest expanse of time and subjects the defendants to the largest exposure for liability. We consider the circuit court's decision without the plaintiff's concession of fact relating to the first and third admissions in this court.

¶ 6. We conclude that the circuit court did not erroneously exercise its discretion in permitting the plaintiffs to withdraw the admissions. We conclude that under Wis. Stat. § 804.11(2), withdrawal of the admissions will subserve the presentation of the merits of the action, and that the defendants did not show that they will be prejudiced in maintaining a defense on the merits by withdrawal of the admissions.

¶ 7. Accordingly, we affirm the decision of the court of appeals affirming the circuit court's order allowing the plaintiffs to withdraw the admissions. We remand the cause to the circuit court for further proceedings not inconsistent with this opinion.

I

¶ 8. We briefly summarize the relevant facts and report additional facts later in the opinion as we discuss the issue presented.

¶ 9. On August 4, 2000, Dr. Bodner performed a tubal ligation on Tywanda Luckett at her request: Within a short time a small mass was found in Ms. Luckett's abdomen near the tubal ligation site. After emergency surgery and post-operative care, Ms. Luckett suffered cardiac arrest and permanent severe brain damage. Upon discharge from the hospital on September 29, 2000, Ms. Luckett was transferred to a long-term care facility where she remained until her death.

¶ 10. On December 5, 2003, Ms. Luckett, her three minor children, and the Wisconsin Department of

Health and Family Services filed a medical malpractice action against Dr. Aaron Bodner, Dr. Prithipal Sethi, Dr. David Chua, Dr. Jonathan Robinson, Dr. David Altman, Aurora Sinai Medical Center, the Medical College of Wisconsin Affiliated Hospitals, Physicians Insurance Company of Wisconsin, the Medical Protective Company, and the Wisconsin Patients' Compensation Fund. The complaint alleges, in essence, that the negligence of the defendant doctors caused Ms. Luckett to suffer severe hypoxic encephalopathy, a form of brain damage.

¶ 11. On June 22, 2005, Aurora Sinai Medical Center and the Medical Protective Company sent the plaintiffs three requests for admissions pursuant to Wis. Stat. § 804.11(1):[5]

> **REQUEST TO ADMIT NO. 1:** Admit that Tywanda Luckett is presently in a persistent vegetative state.
>
> **REQUEST TO ADMIT NO. 2:** Admit that Tywanda Luckett has been in a persistent vegetative state since she was admitted to Silver Spring Health and Rehabilitation Center [a long-term care facility that admitted Ms. Luckett on September 29, 2000, shortly after she suffered brain damage].
>
> **REQUEST TO ADMIT NO. 3:** Admit that the persistent vegetative state of Tywanda Luckett is permanent.

¶ 12. The request for admissions was accompanied by two interrogatories and a request for produc-

---

[5] Wisconsin Stat. § 804.11(1)(a) provides in relevant part that "[e]xcept as provided in s. 804.015, a party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of s. 804.01 (2) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request."

tion. The interrogatories and request for production applied only if the plaintiffs refused the request for admissions in whole or in part. They essentially required the plaintiffs to disclose any evidence supporting the position that Ms. Luckett was not in a persistent vegetative state.

¶ 13. The request for admissions and the interrogatories were obviously designed to eliminate a possible element of damages, namely pain and suffering for the described period. On July 22, 2005, plaintiffs' counsel responded in the affirmative to each of the three requested admissions.

¶ 14. On August 31, 2005, the circuit court entered a scheduling order, which provided that a final pretrial conference would be held on January 19, 2007, and that a three-week jury trial would commence on February 5, 2007. The circuit court ordered the parties to complete all discovery on or before the date of the final pretrial conference.

¶ 15. Ms. Luckett died on October 2, 2005.[6]

¶ 16. On January 18, 2007 (the day before the final pretrial conference and 18 months after the ad-

---

[6] Relying upon a document that two of the defendants filed with the circuit court, the court of appeals stated in its opinion that Luckett died on August 2, 2005. *See Luckett v. Bodner*, No. 2007AP308, unpublished slip op., ¶ 2 & n.2 (Wis. Ct. App. Apr. 22, 2008). In their briefs to this court, however, the parties agree that the correct date of death is stated in the plaintiffs' motion for substitution of a party and in the circuit court's order granting that motion. The plaintiffs' motion and the circuit court's order each state that Luckett died on October 2, 2005.

Upon Ms. Luckett's death, the circuit court granted the plaintiffs' motion to substitute the administrator of Ms. Luckett's estate as a party.

missions), counsel for the plaintiffs e-mailed counsel for the defendants to inform them that plaintiffs' counsel was "withdrawing [his] admission that [Ms. Luckett] was in a persistent vegetative state from the time of her admission to Silver Spring [Health and Rehabilitation Center]." Counsel explained that in final trial preparation, he had found the following documents suggesting that Ms. Luckett may not have been in a persistent vegetative state:

- A note written by Dr. John R. McGuire on April 11, 2001, stating that Ms. Luckett "was able to follow simple commands and nod her head 'yes' or 'no' to simple questions."

- A note written by Dr. Thomas Kidder on April 26, 2001, stating, "It is difficult to tell but I believe she is able to comprehend some of what is said to her . . . ."

- A note written by Dr. Kidder on June 21, 2001, stating that Luckett was "very frightened and fearful" and that Luckett seemed "to be able to indicate yes or no."

- A "swallow study report" of June 21, 2001, stating that Ms. Luckett "appeared very tentative and frightened."

¶ 17. Counsel for the plaintiffs apparently overlooked these items in 2,000 pages of medical records in making the admissions. The defendants had the same 2,000 pages of medical records.

¶ 18. At the final pretrial conference the following day, January 19, 2007, counsel for the plaintiffs orally moved to withdraw his prior admissions. Plaintiffs' counsel explained that these records indicate that Ms. Luckett was aware of what was going on. The circuit court gave counsel for the defendants an opportunity to

respond to the plaintiffs' motion. Defense counsel argued that they would be prejudiced by the withdrawal of the admissions. All counsel, as well as the circuit court, agreed that if the circuit court granted the plaintiffs' motion to withdraw the admissions, the circuit court would have to adjourn the impending trial. Everyone agreed that the parties were not then prepared to litigate the issue whether Ms. Luckett had been in a persistent vegetative state.

¶ 19. The circuit court asked the parties if they would like to revisit the issue early the following week so that they would have the opportunity to furnish the court with additional input. No party asked for an opportunity to address the issue further. The circuit court took down each attorney's e-mail address and promised to send a decision later that same day.

¶ 20. The circuit court granted the plaintiffs' motion to withdraw the admissions.

¶ 21. Dr. Bodner, Dr. Sethi, Aurora Sinai Medical Center, the Medical College of Wisconsin Affiliated Hospitals, Physicians Insurance Company of Wisconsin, and the Medical Protective Company petitioned for leave to appeal the circuit court's nonfinal order. Dr. Altman and the Wisconsin Patients Compensation Fund did not join in the appeal. Dr. Chua and Dr. Robinson prevailed on summary judgment motions and were dismissed from the action.

¶ 22. In sum, the allegedly negligent medical incidents occurred in August/September 2000; the complaint alleging medical malpractice was filed December 5, 2003; the defendants requested the admissions in June 2005 and the plaintiffs made the admissions in July 2005; Ms. Luckett died on October 2, 2005; and the motion to withdraw the admissions was made on January 19, 2007. When the plaintiffs made their admis-

sions, the plaintiffs in effect eliminated any claims they may have had for Ms. Luckett's conscious pain and suffering during the period from September 29, 2000, until her death five years later. In withdrawing these admissions, plaintiffs' counsel acknowledged that the earlier admissions were his "mistake" and the mistake was not discovered until counsel was "doing final trial preparation." All the records in question were in the defendants' possession as well as the plaintiffs'.

¶ 23. The court of appeals granted the defendants' petition for leave to appeal from the adverse order of the circuit court allowing withdrawal of the admissions. In a split decision, the court of appeals affirmed the circuit court's order allowing the plaintiffs to withdraw the admissions.

## II

¶ 24. Two standards of review apply in the present case.

¶ 25. The court must interpret Wis. Stat. § 804.11(2). The interpretation of a statute promulgated under this court's rule-making authority presents a question of law, which this court reviews independently of the circuit court and court of appeals but benefiting from their analyses.[7]

¶ 26. The court must also determine whether the circuit court erroneously exercised its discretion in allowing the plaintiffs to withdraw admissions under Wis. Stat. § 804.11(2).

¶ 27. Wisconsin Stat. § 804.11(2) governs withdrawal or amendment of a party's admission. It pro-

---

[7] *Trinity Petroleum, Inc. v. Scott Oil Co.*, 2007 WI 88, ¶ 32, 302 Wis. 2d 299, 735 N.W.2d 1.

vides that the circuit court may permit withdrawal or amendment of an admission when two conditions are met:[8] (A) "the presentation of the merits of the action will be subserved thereby"; and (B) "the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining the action or defense on the merits."[9] The statute provides in full as follows:

> **Effect of admission.** Any matter admitted under this section is conclusively established unless the court on motion permits withdrawal or amendment of the admission. The court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining the action or defense on the merits. Any admission made by a party under this section is for the purpose of the pending action only and is not an admission for any other purpose nor may it be used against the party in any other proceeding.

¶ 28. The language in Wis. Stat. § 804.11(2) at issue in the present case, namely the second sentence, "was adopted from and is nearly identical to its counterpart provision in [Fed. R. Civ. P. 36(b)]."[10] Rule 36(b) of the Federal Rules of Civil Procedure provides in relevant part that "the court may permit withdrawal or amendment [of an admission] if it would promote the presentation of the merits of the action and if the court

---

[8] *See Mucek v. Nationwide Commc'ns Inc.*, 2002 WI App 60, ¶ 34, 252 Wis. 2d 426, 643 N.W.2d 98 ("Section 804.11(2) provides that a court may permit withdrawal of an admission if two conditions are met." (quotation marks omitted)).

[9] Wis. Stat. § 804.11(2).

[10] *Mucek*, 252 Wis. 2d 426, ¶ 29.

is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."

■

¶ 29. When "a state rule mirrors the federal rule, we consider federal cases interpreting the rule to be persuasive authority."[11] When interpreting Wis. Stat. § 804.11(2), the court may therefore seek guidance in federal cases interpreting Rule 36(b) of the Federal Rules of Civil Procedure.

¶ 30. The texts of Wis. Stat. § 804.11(2) and Fed. R. Civ. P. 36(b), as well as the case law, demonstrate that under Wis. Stat. § 804.11(2), "a court may permit withdrawal if *both* statutory conditions are met[.]"[12] The "two requirements must be met before an admission may be withdrawn: (1) presentation of the merits of the action must be subserved, and (2) the party who obtained the admission must not be prejudiced by the withdrawal."[13] The lack of prejudice to the nonmoving party in maintaining the action or defense on the merits

[11] *State v. Evans*, 2000 WI App 178, ¶ 8 n.2, 238 Wis. 2d 411, 617 N.W.2d 220 (citing *State v. Cardenas-Hernandez*, 219 Wis. 2d 516, 528, 579 N.W.2d 678 (1998)).

[12] *See Mucek*, 252 Wis. 2d 426, ¶ 34 (internal quotation marks omitted; emphasis added).

[13] *Sonoda v. Cabrera*, 255 F.3d 1035, 1039 (9th Cir. 2001).

*See also Am. Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1119 (5th Cir. 1991) ("[W]hile the district court has considerable discretion over whether to permit withdrawal or amendment of admissions, that discretion must be exercise within the bounds of this two-part test: 1) the presentation of the merits must be subserved buy allowing withdrawal or amendment; and 2) the party that obtained the admissions must not be prejudiced in its presentation of the case by their withdrawal." (footnote omitted)).

is a prerequisite of withdrawal under Wis. Stat. § 804.11(2), not a policy goal that may be weighed or balanced against other goals.

██

¶ 31. We now turn to the standard for review of the circuit court's order permitting the plaintiffs to withdraw the admission. The circuit court's order allowing withdrawal or amendment of an admission under Wis. Stat. § 804.11 lies within the circuit court's discretion.[14] This court will uphold the circuit court's order if the circuit court applies a proper standard of law, examines the relevant facts, and reaches a conclusion that a reasonable court could reach, demonstrating a rational process.[15]

¶ 32. In the present case the issue of erroneous exercise of discretion in allowing the plaintiffs to withdraw the admission turns on whether the circuit court applied the proper standard of law. The circuit court, in interpreting and applying Wis. Stat. § 804.11(2), identified the two parts of § 804.11(2) but did not explicitly determine whether withdrawal of the plaintiffs' admission would prejudice the defendants in maintaining their defense on the merits. In its written decision, the circuit court acknowledged that the prejudice issue is "difficult to assess" and that "significant prejudice concerns exist." It recognized that the plaintiffs' motion to withdraw the admissions would "necessitat[e] additional expert evaluation, testimony and related discovery" and would "require[] adjournment of the impending trial and add[] significant

[14] *Mucek*, 252 Wis. 2d 426, ¶ 25 (citing *Schmid v. Olsen*, 111 Wis. 2d 228, 237, 330 N.W.2d 547 (1983)).

[15] *Mucek*, 252 Wis. 2d 426, ¶ 25 (citing *Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982)).

expense[.]" The circuit court, however, did not explicitly determine whether its "significant prejudice concerns" amounted to prejudice to the defendants for purposes of Wis. Stat. § 804.11(2).

¶ 33. Furthermore, the circuit court seemed to interpret Wis. Stat. § 804.11(2) as establishing a two-factor balancing test rather than as setting forth two independent requirements. The circuit court stated that the answer in the present case "lies in the balancing of the two prongs" of Wis. Stat. § 804.11(2). The circuit court further stated that it would grant the plaintiffs' motion to withdraw the admissions because "[w]hile significant prejudice concerns exist, the fairness issue implicated by the possibility that Ms. Luckett was conscious of the catastrophic injuries she suffered cries out for resolution on the merits."

¶ 34. The court of appeals did not view the circuit court as having misinterpreted Wis. Stat. § 804.11(2). Some of the defendants assert that the circuit court erroneously interpreted the statute.

■

¶ 35. When a circuit court applies an incorrect standard of law in making a discretionary decision, the circuit court has erroneously exercised its discretion.[16] This court has concluded, however, in *Schmid v. Olsen*, 111 Wis. 2d 228, 237, 330 N.W.2d 547, that although the circuit court did not articulate or apply the criteria of

---

[16] *Schmid v. Olsen*, 111 Wis. 2d 228, 237, 330 N.W.2d 547 (1983) ("A reviewing court is obliged to uphold a discretionary decision of a trial court, if it can conclude *ab initio* that there are facts of record which would support the trial judge's decision had discretion been exercised on the basis of those facts.")

Wis. Stat. § 804.11(2) as a basis for its decision permitting withdrawal of an admission, reversal was not automatic.[17]

¶ 36. The defendants do not ask this court to remand the matter to the circuit court to exercise its discretion a second time after applying a proper interpretation of Wis. Stat. § 804.11(2). The defendants ask this court to reverse the order of the circuit court and the court of appeals on the ground that withdrawal of the admissions is precluded as a matter of law. The defendants maintain that withdrawal of the admissions will prejudice them as a matter of law in maintaining their defense on the merits.

¶ 37. Adhering to *Schmid v. Olsen*, we examine the record to determine whether it supports the circuit court's ultimate decision to allow withdrawal of the plaintiffs' admissions. We conclude that the record supports the conclusion (A) that withdrawal of the admissions will subserve the presentation of the merits; and (B) that the defendants will not be prejudiced by withdrawal of the admissions in maintaining their defense on the merits.

---

[17] *See Schmid*, 111 Wis. 2d at 237 ("The [circuit] court did not articulate as the basis for its decision the two criteria of sec. 804.11(2), Stats. It is well established that a decision which requires the exercise of discretion and which on its face demonstrates no consideration of any of the factors on which the decision should be properly based constitutes an abuse of discretion as a matter of law. If a trial judge bases the exercise of his discretion upon a mistaken view of the law, his conduct is beyond the limits of his discretion. Even though there was an abuse of discretion in the case before us, reversal by this court is not automatic." (internal citations omitted)).

## A

¶ 38. The first requirement of Wis. Stat. § 804.11(2) emphasizes the importance of having the action resolved on the merits.[18] The circuit court determined that withdrawal of the plaintiffs' admissions will subserve the presentation of the merits of the action because "[i]f, as the [newly-discovered] entries in the medical records . . . arguably indicate, Ms. Luckett was capable of and did experience pain and suffering for the extended period between the time she lapsed into a coma to the time of her death, it is appropriate for the jury to consider that fact and, if liability is established, award damages to compensate that loss."

¶ 39. The defendants generally do not challenge the circuit court's determination that withdrawal of the plaintiffs' admissions will subserve the presentation of the merits of the action.

¶ 40. Some defendants argue that withdrawal of an admission cannot subserve the presentation of the merits of the action unless the admission is "squarely and conclusively contradicted by something in the

---

[18] *See Perez v. Miami-Dade County*, 297 F.3d 1255, 1266 (11th Cir. 2002) ("This part of the test emphasizes the importance of having the action resolved on the merits[.]" (quotation marks and citation omitted)); *Raiser v. Utah County*, 409 F.3d 1243, 1246 (10th Cir. 2005) (same; quoting *Perez*).

*See also* Fed. R. Civ. P. 36, Notes of the Advisory Committee on the 1979 amendments (stating that Fed. R. Civ. P. 36(b) "emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice.").

court's record."[19] This argument does not comport with the case law. Both state and federal cases have concluded that withdrawal or amendment of an admission will promote the presentation of the merits of the action even when the admission is not conclusively contradicted by something in the record.[20]

---

[19] Petitioners' Reply Brief of Aurora Sinai Medical Center, Inc., the Medical Protective Company and the Injured Patients & Families Compensation Fund at 9.

The dissent asserts that the plaintiffs arguably submitted evidence to justify the withdrawal of the admission to the second request but that no evidence was submitted to justify the withdrawal of admissions number one and three. The defendants do not make this argument.

It is not unreasonable, however, to conclude that the entries in the medical records from 2001 "arguably indicate" that Ms. Luckett was capable of and perhaps experienced pain and suffering during the periods covered by the first and third admissions.

[20] *See, e.g., Schmid v. Olsen*, 111 Wis. 2d 228, 330 N.W.2d 547 (1983) (concluding that the presentation of the merits of the action would be subserved by withdrawal of Olsen's admission that he was 70% liable for Schmid's damages, although the extent of Olsen's liability was disputed and was not conclusively shown); *Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007) (concluding that the presentation of the merits of the action would be promoted by withdrawal of Conlon's admission that "neither the issuing of the warrant [for his arrest], his arrest or his subsequent incarceration were caused by negligent or wrongful acts or omissions of United States employees," although nothing conclusively demonstrated that Conlon's admission was false); *Manatt v. Union Pacific Railroad Co.*, 122 F.3d 514, 517 (8th Cir. 1997) ("In the circumstances of this case, 'the prospect of deeming [the] controverted fact[] . . . as having been admitted seems . . . to be anathema to the ascertainment of the truth.' " (quoting *White Consol. Indus., Inc. v. Waterhouse*, 158 F.R.D. 429, 433 (D. Minn. 1994) (brackets and ellipses in *Manatt*))).

¶ 41. The circuit court's discretionary determination that withdrawal of the plaintiffs' admissions will subserve the presentation of the merits of the action was not an erroneous exercise of discretion. The parties in the instant case evidently regard the question of Ms. Luckett's damages for conscious pain and suffering as a key issue that they will dispute at trial. The plaintiffs' admissions, if allowed to stand, would effectively eliminate a determination on the merits of these issues. Thus, granting the plaintiffs' motion to withdraw the admissions will aid in the ascertainment of the truth and the development of the merits. We therefore turn to the second requirement in Wis. Stat. § 804.11(2), relating to prejudice in maintaining a defense on the merits.

### B

¶ 42. Under Wis. Stat. § 804.11(2), a circuit court may allow withdrawal of an admission if "the party who obtained the admission fails to satisfy the court that withdrawal . . . will prejudice the party in maintaining the action or defense on the merits."

¶ 43. The "prejudice" contemplated by Wis. Stat. § 804.11(2) "is not simply that a party [obtaining the admissions] would be worse off without the admissions."[21] To demonstrate prejudice in maintaining the action or defense on the merits, the party who obtained the admission "must show prejudice in addition to the inherent consequence that the party will now have to

---

[21] *Mucek*, 252 Wis. 2d 426, ¶ 30 (citations omitted).

prove something that would have been deemed conclusively established if the opposing party were held to its admissions."[22]

■

¶ 44. Prejudice in maintaining the action or defense on the merits "relates to the difficulty a party [here the defendants] may face in proving its case, *e.g.*, caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions."[23] The prejudice inquiry requires a court to "focus

---

[22] *Id.*

[23] *Brook Village N. Assocs. v. Gen. Elec. Co.*, 686 F.2d 66, 70 (1st Cir. 1982).

*See also Conlon*, 474 F.3d at 622 (quoting *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995) (quoting *Brook Village*, 686 F.2d at 70)); *Raiser v. Utah County*, 409 F.3d 1243, 1246 (10th Cir. 2005) (quoting *Hadley*, 45 F.3d at 1348 (quoting *Brook Village*, 686 F.2d at 70)); *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 154 (6th Cir. 1997) ("Prejudice under Rule 36(b) . . . 'relates to special difficulties a party may face caused by a sudden·need to obtain evidence upon withdrawal or amendment of an admission.' " (quoting *Am. Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991) (citing *Brook Village*, 686 F.2d at 70))); *F.D.I.C. v. Prusia*, 18 F.3d 637, 640 (8th Cir. 1994) (quoting *Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1314 (8th Cir. 1983) (quoting *Brook Village*, 686 F.2d at 70)); *Am. Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991) ("Courts have usually found that the prejudice contemplated by Rule 36(b) relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." (citing *Brook Village*, 686 F.2d at 70)); *Smith v. First Nat'l Bank of Atlanta*, 837 F.2d 1575, 1578 (11th Cir. 1988) (quoting *Brook Village*, 686 F.2d at 70); 7 James Wm. Moore et al., *Moore's Federal Practice*

on the prejudice that the nonmoving party [here the defendants] would suffer at trial."[24]

¶ 45. It is the defendants' burden to demonstrate that withdrawal or amendment of the admissions will prejudice them in maintaining their defense on the merits.[25]

¶ 46. The defendants offer numerous arguments in support of their position that withdrawal of the plaintiffs' admissions will prejudice them in maintaining their defense on the merits. We examine each of these arguments in turn.

¶ 47. The defendants contend that because granting the plaintiffs' motion meant adjourning the trial for additional discovery, the defendants are prejudiced as a matter of law in maintaining their defense on the merits. The defendants rely on two decisions of the court of appeals, *Mucek v. Nationwide Communications, Inc.*, 2002 WI App 60, 252 Wis. 2d 426, 643 N.W.2d

---

§ 36.13, at 36–46 (3d ed. rev. 2008) ("Rule 36(b) contemplates prejudice arising from the difficulty a party may face in proving its case because of the sudden need to obtain evidence required to prove the matter that has been admitted." (footnote omitted)).

[24] *Conlon*, 474 F.3d at 622.

[25] *See Conlon*, 474 F.3d at 622 ("The party relying on the deemed admission has the burden of proving prejudice."); *Raiser*, 409 F.3d at 1246 ("The second Rule 36(b) factor requires [the nonmoving party] to show that it would be prejudiced by the withdrawal of [the] admissions[.]"); *Prusia*, 18 F.3d at 640 ("[T]he party who obtained the mistaken admission . . . has the burden of proving that an amendment would prejudice him." (citations omitted)); 7 James Wm. Moore et al., *Moore's Federal Practice* § 36.13, at 36–44 (3d ed. rev. 2008) ("The party who obtained the admission must show the court that it will be prejudiced if the amendment or withdrawal is allowed." (footnote omitted)).

98, and *Estate of Hegarty v. Beauchaine*, 2006 WI App 248, 297 Wis. 2d 70, 727 N.W.2d 857, in support of their position that the circuit court may not permit withdrawal or amendment of an admission under Wis. Stat. § 804.11(2) when additional discovery and adjournment of the trial would result.

¶ 48. We do not agree with the defendants' interpretation of *Mucek* or *Estate of Hegarty*. These cases demonstrate, as the circuit court recognized,[26] that it lies within the circuit court's discretion to find prejudice under Wis. Stat. § 804.11(2) on the ground that withdrawal or amendment of an admission would necessitate additional discovery and an adjournment of the trial. Neither case demonstrates that prejudice is established as a matter of law when withdrawal or amendment of an admission would necessitate additional discovery and adjournment of the trial.

¶ 49. In the *Mucek* case, the circuit court denied Nationwide Communications' motion to withdraw admissions, concluding that withdrawal would prejudice Mucek in maintaining the action on the merits. In assessing the prejudice to Mucek, the circuit court focused largely on Nationwide Communications' ongoing failure to comply with the court's discovery orders. On appeal, Nationwide Communications argued that the circuit court had applied an improper standard of law.

¶ 50. The court of appeals sustained the circuit court's determination, concluding that "a trial court

[26] The circuit court's written decision states: "[R]esultant adjournment and additional discovery is sufficient to establish prejudice so as to justify denial of the request to withdraw an admission." (citing *Mucek*, 252 Wis. 2d 426, ¶ 32 n.8).

446

may consider a party's history of discovery abuse . . . when determining prejudice under § 804.11(2) . . . ."[27] The court of appeals reasoned that "[a] party's ongoing failure to provide documents and information will frequently magnify the importance of requests for admissions precisely because the requesting party has already been deprived of requested information and is all the more dependent on admissions to identify what is actually in dispute."[28]

¶ 51. The court of appeals also opined, in a footnote, that the circuit court's prejudice determination could be sustained because withdrawal of Nationwide Communications' admissions likely would necessitate an adjournment of the trial so that Mucek could obtain additional evidence. The court of appeals stated that "[a]n adjournment of the trial and the need to again attempt discovery would itself constitute prejudice to Mucek[.]"[29] The *Mucek* court of appeals further stated that "[a] trial court's general authority to maintain the orderly and prompt processing of cases provides authority to deny withdrawal, apart from the two factors in Wis. Stat. § 804.11(2)."[30] The circuit court in the present case apparently concluded, within its discretion, that despite the fact that the lawsuit was over three years in duration and pending over six years after the alleged negligence, it could maintain sufficient order in the proceedings if the trial were adjourned and additional discovery conducted.

[27] *Mucek*, 252 Wis. 2d 426, ¶ 28.

[28] *Mucek*, 252 Wis. 2d 426, ¶ 31.

[29] *Mucek*, 252 Wis. 2d 426, ¶ 32 n.8 (citing *Equal Employment Opportunity Comm'n v. Jordan Graphics, Inc.*, 135 F.R.D. 126, 128–29 (W.D.N.C. 1991)).

[30] *Mucek*, 252 Wis. 2d 426, ¶ 35.

¶ 52. In *Estate of Hegarty*, the circuit court denied a defendant insurer's motion to withdraw admissions, concluding in part that withdrawal would prejudice the Estate in maintaining the action on the merits. The circuit court stated that the motion for withdrawal had come "pretty late in the game" and that withdrawal would mean that the Estate "would have to do more discovery."[31]

¶ 53. The court of appeals upheld the circuit court's exercise of discretion. It agreed with the circuit court that withdrawal of the admissions would mean "a substantial amount of new discovery . . . causing additional delays in an already very long process."[32] It sustained the circuit court's determination that the requirement of additional discovery, and the concomitant delay in the action, would prejudice the Estate.[33]

¶ 54. In both *Mucek* and *Estate of Hegarty*, the court of appeals sustained the circuit court's discretionary determination that withdrawal of an admission would result in prejudice for purposes of Wis. Stat. § 804.11(2). Neither the *Mucek* court of appeals nor the *Estate of Hegarty* court of appeals addressed the issue whether the circuit court would have erred if it had granted the motions for withdrawal in those cases. Accordingly, neither case demonstrates that prejudice is established as a matter of law when withdrawal or amendment of an admission would necessitate additional discovery and adjournment of the trial.

¶ 55. The federal case law is similar to *Mucek* and *Estate of Hegarty*. Several federal district courts have examined the need for additional discovery or adjourn-

---

[31] *Estate of Hegarty*, 297 Wis. 2d 70, ¶ 29.

[32] *Id.*, ¶ 40.

[33] *Id.*

ment of the trial when determining whether withdrawal or amendment of an admission under Fed. R. Civ. P. 36(b) will result in prejudice.[34]

¶ 56. No federal decision holding that a federal district court is required to find prejudice under Fed. R. Civ. P. 36(b) when withdrawal would necessitate additional discovery and adjournment of the trial has been brought to the court's attention. The fact that a trial must be adjourned, or that the time for discovery must be enlarged, does not necessarily mean that the nonmoving party will suffer prejudice in maintaining the action or defense on the merits. In examining prejudice, the courts should "focus on the prejudice that the nonmoving party would suffer at trial."[35]

¶ 57. We therefore turn to the defendants' arguments about the prejudice they will suffer at trial.

¶ 58. Although adjournment of the trial may give the defendants sufficient time to prepare to litigate the question whether Ms. Luckett was in a persistent vegetative state, the defendants contend that they will be prejudiced for purposes of Wis. Stat. § 804.11(2) because the plaintiffs' admissions and subsequent with-

---

[34] See Equal Employment Opportunity Comm'n v. Jordan Graphics, Inc., 135 F.R.D. 126, 129 (W.D.N.C. 1991), cited in Mucek, 252 Wis. 2d 426, ¶ 32 n.8 (finding prejudice because permitting withdrawal "may require additional discovery and would most likely delay the disposition of th[e] matter"); Ropfogel v. United States, 138 F.R.D. 579, 584 (D. Kan. 1991) (finding prejudice in part because withdrawal could "greatly delay the trial of this matter"); Branch Banking & Trust Co. v. Deutz-Allis Corp., 120 F.R.D. 655, 659 (E.D.N.C. 1988) (finding prejudice in part because withdrawal would interject a new "issue in the case upon which no discovery has heretofore been undertaken").

[35] See, e.g., Brook Village, 686 F.2d at 70; Conlon, 474 F.3d at 622.

drawal caused the defendants to forgo opportunities to procure relevant evidence that they can no longer obtain. They argue that as a result of the admissions, they did not conduct an independent medical examination of Ms. Luckett, and that as a result of the withdrawal of the admissions they will have to rely upon Ms. Luckett's medical records and cross-examination of Ms. Luckett's treating physician at trial.

¶ 59. The defendants argue that they have lost their opportunity to make use of a particular expert knowledgeable about persistent vegetative states, namely Dr. Ronald Cranford. Dr. Cranford passed away between the date of the plaintiffs' admissions and the date that the plaintiffs moved to withdraw the admissions.

¶ 60. Federal courts have recognized that the prejudice required to be shown by a party objecting to a motion for withdrawal of admissions relates to the difficulty the party may face in proving its case because of the unavailability of key witnesses in light of the delay.[36]

¶ 61. Dr. Cranford looked at some of Ms. Luckett's records to determine whether Ms. Luckett fit the characteristics of one in a persistent vegetative state. Upon receipt of the plaintiffs' admissions, the defendants advised Dr. Cranford that his services were no longer needed. The defendants argue that it was the plaintiffs' admissions that effectively deterred the defense from asking Dr. Cranford to examine Ms. Luckett's medical records and to perform an independent medical examination to determine whether she was in a persistent vegetative state. The defendants claim that had there

[36] The defendants cite *Raiser v. Utah County*, 409 F3d 1243, 1247 (10th Cir. 2005), and *Sonoda v. Cabera*, 255 F.3d 1035, 1039 (9th Cir. 2001).

been a denial of the requested admissions in July 2005, there would have been a period from July 22 until October 2, 2005, when (with hindsight on the death of Ms. Luckett) Dr. Cranford would have done an independent medical examination. After the plaintiffs' admissions, such an examination was not necessary, the defendants argue, and the intervening death of Ms. Luckett made any medical examination impossible. Indeed, the crux of the defendants' arguments about prejudice is that Ms. Luckett's death after the plaintiffs' admissions prejudiced the defendants in refuting the plaintiffs' claim for conscious pain and suffering.

¶ 62. The defendants offer no evidence or argument that a medical examination of Ms. Luckett between July and October 2005 would have enabled Dr. Cranford or any other medical examiner to evaluate Ms. Luckett's condition from September 29, 2000, through July 22, 2005. The defendants acknowledge that they do not know (and the record does not show) whether an independent medical examination would have helped the defendants in refuting the plaintiffs' claim for conscious pain and suffering. Rather, the defendants argue that their independent examination "wouldn't have hurt the defense, and that is prejudice."[37] We do not equate the defendants' inability to introduce evidence that does not hurt the defense with prejudice to the defense in maintaining a defense on the merits.

¶ 63. The defendants had the opportunity to make an independent medical examination of Ms. Luckett before the admissions. They did not, even though their request for admissions, along with the accompa-

[37] Reply Brief of Defendants-Appellants, Aaron C. Bodner, M.D., and Physicians Insurance Company of Wisconsin, Inc. at 11.

451

nying interrogatories and request for production, demonstrate that the question whether Ms. Luckett was in a persistent vegetative state was not settled. As the court of appeals stated, the "defendants had numerous opportunities to request an order for a medical examination in connection with several Wis. Stat. § 802.10(3) scheduling orders issued between the commencement of this litigation on December 5, 2003, and the July 22, 2005, admission at issue here. None of the defendants made such a request."[38] The plaintiffs' motion to withdraw the admissions did not cause the defendants' sudden difficulty in maintaining their defense on the merits.

¶ 64. The defendants also assert that the withdrawal of the admissions will prejudice them in maintaining their defense inasmuch as they did not depose certain health care professionals on the issue of Ms. Luckett's persistent vegetative state.[39] The defendants argue that as a result of the admissions they lost the opportunity to depose these relevant witnesses when their memories were still fresh about their personal experiences with Ms. Luckett. The defendants assert that had the plaintiffs not made the admissions in July 2005, the defendants might have deposed these health care professionals after July 2005. The defendants assert that "[t]he delay in reaching discovery on her

---

[38] *Luckett v. Bodner*, No. 2007AP308, unpublished slip op., ¶ 24 (Wis. Ct. App. Apr. 22, 2008).

[39] A total of 26 depositions were taken from November 24, 2004, to January 31, 2007. Depositions were taken of every named physician defendant and treating health care provider from November 2004 to June 15, 2005. Depositions were also taken of plaintiffs' experts from November 8, 2005, to July 26, 2006, and of defense experts from December 15, 2006, to January 31, 2007.

persistent vegetative state was entirely attributable to the plaintiffs' admission that Ms. Luckett was in such a state and was not conscious of any pain and suffering."[40]

¶ 65. We are not persuaded by this argument. It is hard to understand why the defendants' failure to depose witnesses about Ms. Luckett's state of consciousness of pain and suffering is, as the defendants assert, entirely the plaintiffs' fault. The depositions could have been taken before the July 2005 admissions.

¶ 66. The defendants try to explain their failure to do an independent medical examination or to take depositions on the issue of Ms. Luckett's persistent vegetative state by asserting that until the plaintiffs' motion in 2007 to withdraw the admissions, conscious pain and suffering was never an issue in the case. The defendants urge that from the filing of the suit until January 18, 2007, all counsel were proceeding under the assumption that Ms. Luckett was in a persistent vegetative state.

¶ 67. The defendants explain that "[f]or the defense, however, that assumption needed to be confirmed or the possible claim of conscious pain and suffering dealt with, by defense experts. The confirmation . . . was accomplished by the July 22 admissions . . . ."[41] We

---

[40] Petitioners' Brief of Aurora Sinai Medical Center, Inc., The Medical Protective Company and The Injured Patients & Families Compensation Fund at 16.

[41] Defendants-Co-Appellants-Petitioners, Prithipal S. Sethi, M.D., Medical College of Wisconsin Affiliated Hospitals, Inc., and Physicians Insurance Company of Wisconsin, Inc.'s Reply Brief at 4. *See also* Defendants-Co-Appellants-Petitioners, Prithipal S. Sethi, M.D., Medical College of Wisconsin Affiliated Hospitals, Inc., and Physicians Insurance Company of Wisconsin, Inc.'s Brief and Appendix at 11 (The defendants explain the

453

do not find this explanation of the defendants' assertion of reliance on the parties' assumptions of Ms. Luckett's persistent vegetative state to be a convincing explanation of the defendants' failure to conduct an independent medical examination or to get additional depositions between September 29, 2003, and July 22, 2005. The defendants will not be prejudiced by being placed in the same position they would have been had the admissions not been mistakenly made on July 22, 2005.

¶ 68. The argument that the defendants will be prejudiced because witnesses' memories have faded is also not persuasive. The medical records indicating that Ms. Luckett may not have been in a persistent vegetative state are dated April and June 2001. Four years would have already elapsed between the observations in 2001 and any depositions that could have been taken in 2005 if the plaintiffs had not made the admissions. Memories of a patient's condition in 2001 through 2004 had undoubtedly already faded by July 2005. These memories, in all likelihood, were not fresh in July 2005 and also were not fresh in 2007 when the admissions were withdrawn.

¶ 69. The defendants also assert that they will be prejudiced because the withdrawal of the admissions may increase their financial exposure. The defendants point out that after the plaintiffs' admissions, their liability for damages for pain and suffering was for the 33 days that Ms. Luckett may have suffered conscious pain from the date of the operation until September 29, 2000. With the withdrawal of the admissions, the defendants face liability for many months that Ms. Luckett may have suffered conscious pain, namely from

inconsistency, asserting that the issue of Ms. Luckett's state of consciousness "was only considered by the defense as a 'rule out' possibility until the admissions of July 22, 2005.").

September 29, 2000, until her death. The defendants argue that the withdrawal of the admissions thus adds an uncapped claim for conscious pain and suffering that could significantly increase a verdict against them in the instant case. The withdrawal of the admissions therefore left the defendants potentially liable for an uncapped claim for more damages for conscious pain.

¶ 70. We agree with the circuit court that the defendant's "increased exposure . . . [is not] a pertinent consideration on the prejudice prong" of Wis. Stat. § 804.11(2). The defendants' increased exposure results from the defendants' having to litigate a question (Ms. Luckett's capacity to experience conscious pain and suffering) that the defendants would have had to litigate in the absence of an admissions. The case law is clear that the party opposing a motion to withdraw or amend an admission "must show prejudice in addition to the inherent consequence that the party will now have to prove something that would have been deemed conclusively established if the opposing party were held to its admissions."[42] As we have stated, the defendants will not be prejudiced in maintaining a defense on the merits if they are placed in the same position they would have been in had the admissions not been mistakenly made.

¶ 71. The defendants urge that withdrawal of the plaintiffs' admissions should not be permitted because the plaintiffs cannot show excusable neglect or good cause.[43] Section 804.11(2) does not, however, make

---

[42] *Mucek*, 252 Wis. 2d 426, ¶ 30.

[43] During the final pretrial hearing, the circuit court stated that it is "understandable that given the volume of records that are involved, given the length of treatment, the complexity of

"excusable neglect" a prerequisite for withdrawal or amendment of an admission. As the United States Court of Appeals for the Eighth Circuit has explained, a court must "consider the effect upon the litigation and prejudice to the resisting party, rather than focusing on the moving party's excuses for an erroneous admission."[44]

¶ 72. In sum, the circuit court record is sufficient to support the circuit court's discretionary determination to allow the plaintiffs to withdraw the admissions. For the reasons set forth, we conclude that the circuit court did not erroneously exercise its discretion in granting the plaintiffs' motion to withdraw the admissions.

¶ 73. Accordingly, we affirm the decision of the court of appeals affirming the circuit court's order allowing the plaintiffs to withdraw the admissions. We remand the cause to the circuit court for further proceedings not inconsistent with this opinion.

*By the Court.*—The decision of the Court of Appeals is affirmed.

---

medical issues, et cetera, that [the records suggesting that Ms. Luckett was conscious in 2001 were] quote/unquote missed." The circuit court did not explicitly determine whether the failure of plaintiffs' counsel to discover the records earlier resulted from "excusable neglect."

[44] *Prusia,* 18 F.3d at 640 (quotation marks and citation omitted). *See also Federal Procedure: Lawyer's Edition* (2007) §§ 26.749–.750, at 520 ("The moving party's excuse for its erroneous admission is not a relevant consideration in determining a motion to withdraw or amend an admission. . . . [Fed. R. Civ. P. 36(b)] does not require the moving party to prove excusable neglect." (footnotes omitted)).

¶ 74. ANNETTE KINGSLAND ZIEGLER, J. *(concurring).* I join in the majority opinion and concur with that opinion in that the majority concludes that the defense failed to meet its burden to show "that withdrawal or amendment will prejudice the party *in maintaining the action or defense on the merits.*" Wis. Stat. § 804.11(2) (emphasis added).

¶ 75. Indeed, the circuit court erred in applying a balancing test in the case at issue. It was the circuit court's duty to consider the two conditions set forth in Wis. Stat. § 804.11(2): (1) the circuit court may permit withdrawal or amendment of an admission when the presentation of the merits of the action will be subserved thereby, and (2) the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining the action or defense on the merits. Instead of making findings as to the prejudice element, the circuit court wrongfully applied a balancing test. As a result, one remedy could be to remand this case to the circuit court to reach a conclusion regarding prejudice. However, given the record in this case and the timing of the relevant events, a remand is unnecessary.

¶ 76. I concur with the majority opinion in that the defense failed to meet its burden to show that withdrawal of the admission would prejudice them in maintaining an action or defense on the merits. The circuit court gave the defense an opportunity to produce such evidence, but the defense failed to do so. As a result, upon review of this record, the defense did not make a showing that at the time the admission was obtained, it could have gone back several years previous to determine whether Luckett was in a persistent vegetative state.

¶ 77. As for the critical nature of the timing in this case, the parties now agree that as of July 22, 2005, Ms. Luckett was in a persistent vegetative state. *See* majority op., ¶ 4. Between April 1, 2001, and June 21, 2001, Ms. Luckett's medical records indicate that Ms. Luckett was aware of events and was responsive to questions. On June 22, 2005, the defense sought the relevant admissions regarding Ms. Luckett's persistent vegetative state. The relevant admissions were obtained in July of 2005. Ms. Luckett died a few months later, on October 2, 2005. On January 18, 2007, the plaintiff sought to withdraw the previously made admission.

¶ 78. These facts beg the following question in this case: Had the admission not been made in July of 2005, what could the defense have done in 2005 or 2007 to evaluate Ms. Luckett's condition in 2001? The defense did not produce any proof that it was prejudiced in pursuing a defense on the merits. In other words, the trial court was not presented with any persuasive argument that had the defense not obtained the 2005 admission, or had the admission not been withdrawn in 2007, that the defense could have done something different to have refuted the 2001 interval. If there was an admission or if there was not an admission, it is almost irrelevant, given the timing of the admission and the fact that as of the time of the 2005 admission she was in a persistent vegetative state. There is nothing in the record to reflect that the withdrawal of the admission affects the defense differently now. This case is not one in which the admission is made contemporaneously with or on the heels of a lucid interval. Had that been the case, we could certainly reach a different conclusion, so long as some evidence was presented regarding prejudice. In this case, Ms. Luckett was responsive in 2001; the admission was in July of 2005, a time when everyone agrees Ms. Luckett

458

was in a persistent vegetative state; her death was on October 2, 2005; the withdrawal occurred on January 18, 2007. It is difficult to determine how anything other than a paper review could have been conducted in 2005 and the same is true for 2007 or even at present. Nothing exists in the record to refute that conclusion.

¶ 79. The problem with the defense's argument now is that even if the defense is placed back in the position they would have been at the time of the admission, the defense fails to show that an expert would be able to do something different than he or she could do now. The burden was on the defense to show the circuit court how they are prejudiced by that admission being withdrawn and how it impacts their ability to go back any differently than it does now. If the timing of the persistent vegetative state admission and withdrawal were different, then the outcome in this case could be different. There simply is no showing of that prejudice.

¶ 80. Finally, I would note that the trial court is in a position to create a fair process by which a trial on the merits can occur and that there is no undue prejudice as this case goes forward. There may be issues that arise regarding the effect of the late withdrawal on the expert's opinions. The trial court will need to address those in due course and create an even playing field. Trial courts utilize a variety of techniques to ensure fairness and this trial court should do the same.

¶ 81. For the foregoing reason I concur.

¶ 82. I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and MICHAEL J. GABLEMAN join this concurrence.

¶ 83. DAVID T. PROSSER, J. (*dissenting*). In affirming the decision of the court of appeals, the major-

ity seriously undermines the value of Wis. Stat. § 804.11(2) (2007–08)[1] and rewrites the law on erroneous exercise of discretion. To understand the damage that is being done, we must examine the facts and law in full.

I

¶ 84. Chapter 804 in the Wisconsin Code of Civil Procedure pertains to "Depositions and Discovery." Wisconsin Stat. § 804.11, entitled "Requests for admission," is a vital part of this chapter.

¶ 85. Under Wis. Stat. § 804.11(1)(a), "a party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of s. 804.01(2)." Section 804.01(2)(a) explains that "[p]arties may obtain discovery regarding *any matter*, not privileged, *which is relevant to the subject matter involved in the pending action*, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." (Emphasis added.)

¶ 86. This is straightforward. The rationale for the rule is explained in a 1976 commentary on "new" Chapter 804 in the Marquette Law Review: "This rule [section 804.11] replaces former section 889.22 with the language of Federal Rule 36 and offers *a much improved procedure for obtaining from a party admissions of facts and other items of proof over which there is no dispute and which can be costly and time-consuming to prove at trial.*" Patricia Graczyk, *The New Wisconsin Rules of Civil Procedure Chapter 804*, 59 Marq. L. Rev. 463, 519 (1976) (emphasis added).

---

[1] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

¶ 87. In this case, one of the defendants sent three requests for admission to the plaintiffs, pursuant to Wis. Stat. § 804.11. The requests were sent on June 22, 2005. By that time, the parties had taken depositions of every named physician-defendant as well as the following treating health care providers: Julie Cavey, Sandra Daniels, Jessica Graessner, Chung Mea Ha, M.D., Marilyn Kuester, Helen Meissner, and Richard Mueller. Inasmuch as the parties already had depositions from many of the *fact witnesses*, it was completely reasonable for the defendants to seek admissions of facts "over which there [wa]s no dispute and which [could] be costly and time-consuming to prove at trial." *Id.* Most competent advocates would do no less.

¶ 88. The majority puts an ominous spin on these common sense requests for admission:

> The defendants had the opportunity to make an independent medical examination of Ms. Luckett before the admissions. *They did not, even though their request[s] for admission[], along with the accompanying interrogatories and request for production, demonstrate that the question whether Ms. Luckett was in a persistent vegetative state was not settled.* As the court of appeals stated, the "defendants had numerous opportunities to request an order for a medical examination in connection with several . . . scheduling orders issued between the commencement of this litigation . . . and the July 22, 2005, admission[s] at issue here. None of the defendants made such a request."

Majority op. ¶ 63 (emphasis added).

¶ 89. Elsewhere in the opinion, the majority asserts that "[t]he defendants had the same 2,000 pages of medical records" as the plaintiffs. *Id.,* ¶ 17.

¶ 90. There are implications in these statements. The first is that the defendants should have combed

461

through 2,000 pages of medical records and conducted a medical examination of Tywanda Luckett, even though the plaintiffs did not. The second implication is that perhaps the defendants did comb through the medical records and unearth what the plaintiffs eventually discovered. In that event, the defendants' requests for admission were nothing more than a skillful effort to euchre plaintiffs' counsel into making fatal admissions. If this is what happened, then defendants' counsel were not surprised and ought not complain about their self-created predicament.

¶ 91. The problem is that these expectations and suspicions are not grounded in the record. Without justification, the majority treats the defendants as though they possessed unlimited time and money to conduct investigation and discovery and their requests for admission were an effort to pull a fast one on the plaintiffs rather than employ a valuable tool to narrow the facts in dispute.[2] When the supreme court engages

[2] The majority claims that the issue of "whether Ms. Luckett was in a persistent vegetative state was not settled" because counsel made the requests for admission, which were also accompanied by interrogatories and a request for production. Majority op., ¶ 63. The majority's statement implies that the parties thought Ms. Luckett's persistent vegetative state was in doubt. However, the majority's claim is unsupported by the record. In fact, the record supports the opposite conclusion, i.e., the parties in this case were proceeding under the assumption that Ms. Luckett was in a persistent vegetative state from the time she entered the Silver Spring Health and Rehabilitation Center until the time of her death. It was not until the late afternoon of January 18, 2007, when plaintiffs' counsel states he first uncovered the notes from 2001, that this working assumption was questioned.

Requesting the admissions and including an interrogatory and request for production does not suggest that the issue of

in this sort of second-guessing, it invites courts to speculate about the motivation behind requests for

Ms. Luckett's persistent vegetative state was in question, because "requests for admission are not designed to discover facts." Jeffrey S. Kinsler, *Requests for Admission in Wisconsin Procedure: Civil Litigation's Double-Edged Sword,* 78 Marq. L. Rev. 625, 632 (1995). In particular, the party requesting the admission "is assumed [to] . . . know[] the facts before asking an adverse party to admit that the statement is true." *Id.*

In addition, interrogatories and other requests for discovery are often included with requests for admission. *See, e.g., Asea, Inc. v. S. Pac. Transp. Co.,* 669 F.2d 1242, 1244 (9th Cir. 1981) ("Each of the requests for admissions was accompanied by an interrogatory . . . ."). This is often the case because the responding party may not provide straight-forward, unequivocal answers to the requests. *See* Kinsler, *supra,* at 631. If the responding party denies the requests for admission, then the interrogatories and other forms of discovery are used to probe the facts and reasoning allegedly supporting the denial. *See, e.g., Asea,* 669 F.2d at 1244 ("[The interrogatories] asked that if the railroads' response was anything other than an unqualified admission, they should state the facts, documents and witnesses upon which the response was based."). The interrogatories and request for production in this case were propounded for this latter purpose:

> INTERROGATORY NO. 1: If you deny that Tywanda Luckett is in a persistent vegetative state or, alternatively, deny information sufficient to form a belief as to whether she is in a persistent vegetative state, then itemize each and every behavior, action or response either solicited or observed by any health care provider or lay person, which you contend is inconsistent with a diagnosis of persistent vegetative state. Identify, by name, address and, if relevant, position title, of each individual who has seen any such behavior or actions on the part of Tywanda Luckett which are inconsistent with a persistent vegetative state.
>
> ANSWER: Not applicable.
>
> INTERROGATORY NO. 2: Identify (by name and professional address) any health care providers who have reached a diagnosis other than a persistent vegetative state to explain Tywanda Luckett's condition.

admission and undermines the value of this discovery tool in civil practice.

## II

¶ 92. It is against this background that we examine the majority's review of the circuit court's decision.

¶ 93. On June 22, 2005, Aurora Sinai Medical Center and the Medical Protective Company sent the plaintiffs three requests for admission. On July 22, 2005, plaintiffs' counsel responded in the affirmative to each of the three requested admissions and said that the interrogatories and the request for production were "not applicable." On January 18, 2007, the day before the final pretrial conference, plaintiffs' counsel notified defendants' counsel that the plaintiffs were withdrawing their three admissions. Counsel's e-mail to that effect was sent at 2:57 p.m. The hearing on the request to withdraw the admissions was held at 9 a.m. the next morning.

¶ 94. It should be noted that plaintiffs' counsel did not send the aforementioned e-mail to the circuit court. The court did not learn about plaintiffs' discovery and request to withdraw admissions until the following morning. The circuit court, intently focused on multiple pending motions, was given no advance notice about

ANSWER: Not applicable.

REQUEST FOR PRODUCTION NO. 1: Produce any medical records, notes or other written or visual documentation which evidences that Tywanda Luckett is in a neurologic condition other than a persistent vegetative state.

ANSWER: Not applicable.

In light of these considerations, the majority's claim that Ms. Luckett's persistent vegetative state was in doubt when the requests for admission were made is unsupported.

the critical decision it would be asked to make. At the informal hearing in chambers, the court may not have been given copies of the medical records in question or a copy of the e-mail, because it is clear that the court, like several of the attorneys, occasionally misstated the facts.

¶ 95. When there is a motion or request to withdraw admissions previously made, the court must interpret and apply Wis. Stat. § 804.11(2). That subsection reads, in part, as follows: "The court may permit withdrawal . . . when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal . . . will prejudice the party in maintaining the action or defense on the merits." Wis. Stat. § 804.11(2).

¶ 96. The majority opinion correctly states that the text of Wis. Stat. § 804.11(2), as well as the case law, demonstrates that " 'a court may permit withdrawal if *both* statutory conditions are met[.]' " Majority op., ¶ 30 (quoting *Mucek v. Nationwide Commc'ns, Inc.*, 2002 WI App 60, ¶ 34, 252 Wis. 2d 426, 643 N.W.2d 98) (emphasis and alteration in majority opinion).

¶ 97. The majority opinion also correctly states that the circuit court's decision is a discretionary decision. *Id.*, ¶ 31. "This court will uphold the circuit court's order if the circuit court [1] applies a proper standard of law, [2] examines the relevant facts, and [3] reaches a conclusion that a reasonable court could reach, [4] demonstrating a rational process." *Id.* (citing *Mucek*, 252 Wis. 2d 426, ¶ 25 (citing *Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982))).[3]

---

[3] In 1981, this court explained what is necessary to sustain a circuit court's exercise of discretion:

¶ 98. In reviewing a discretionary decision, each of these factors should be considered.

¶ 99. First, the circuit judge applied an incorrect standard of law because he stated that the answer "lies in the balancing of the two prongs" (factors). This is what the judge wrote:

> [T]here is a two-pronged analysis required in assessing the propriety of withdrawal of an admission. First, will the presentation of the merits of the action be subserved[?] Second, will the party who previously obtained and relied upon the admission be prejudiced[?] . . . [T]he resultant obligation to prove a fact that had been conclusively established does not establish prejudice. However, *resultant adjournment and additional discovery is sufficient to establish prejudice so as to justify denial of the request to withdraw an admission.*
>
> I have little hesitance in concluding that the first prong of the analysis is established. . . .
>
> The second prong is more difficult to assess. We are on the verge of trial. All parties have expended consid-

---

A discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law. Additionally, and *most importantly, a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination.*

*Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981) (emphasis added). On the other hand, "if the facts of record fail to support the trial court's decision, or if our review of the record indicates that the trial court applied the wrong legal standard, we will reverse the trial court's decision as an erroneous exercise of discretion." *Johnson Bank v. Brandon Apparel Grp., Inc.*, 2001 WI App 159, ¶ 8, 246 Wis. 2d 828, 632 N.W.2d 107 (citing *Meier v. Champ's Sport Bar & Grill, Inc.*, 2001 WI 20, ¶ 42, 241 Wis. 2d 605, 623 N.W.2d 94).

erable time, effort and resources in preparation for trial. We have dedicated a significant block of our calendar (as have all the lawyers and, to a lesser extent, some of the witnesses) to this trial. Allowing the withdrawal, necessitating additional expert evaluation, testimony and related discovery, requires adjournment of the impending trial and adds significant expense.

*The proper answer to this dilemma lies in the balancing of the two prongs.* In that regard, I have little difficulty reaching the conclusion that the motion should be granted.

Letter from Christopher R. Foley, Circuit Judge, Milwaukee County, to Counsel for the Parties (Jan. 19, 2007) (emphasis added (internal footnotes and citations omitted)) [hereinafter Letter from Judge Foley].

¶ 100. The court applied the wrong standard of law, and it is quite obvious that the court *relied* upon the wrong standard of law to overcome the existence of prejudice. The court acknowledged that "significant prejudice concerns exist." *Id.* The court spelled out some of those concerns in its letter. *Id.* And the court explained its understanding that "resultant adjournment and additional discovery is sufficient to establish prejudice." *Id.* In short, the court found prejudice. Nonetheless, it still permitted withdrawal of the three admissions. At a minimum, this court should remand the case for an evaluation of a motion to withdraw, applying proper legal standards. This is precisely what the court ordered in *Schmid v. Olsen,* 111 Wis. 2d 228, 239, 330 N.W.2d 547 (1983).

¶ 101. The second deficiency in the circuit court's determination is that the court failed to "examine[] the relevant facts." Majority op., ¶ 31 (citing *Mucek,* 252 Wis. 2d 426, ¶ 25 (citing *Loy,* 107 Wis. 2d at 414–15)).

467

¶ 102. The defendants requested three admissions:

> REQUEST TO ADMIT NO. 1: Admit that Tywanda Luckett is presently in a persistent vegetative state. .

> REQUEST TO ADMIT NO. 2: Admit that Tywanda Luckett has been in a persistent vegetative state since she was admitted to the Silver Spring Health and Rehabilitation Center.

> REQUEST TO ADMIT NO. 3: Admit that the persistent vegetative state of Tywanda Luckett is permanent.

The plaintiff admitted each request.

¶ 103. Eighteen months later and less than three weeks before a scheduled trial, the circuit court permitted the plaintiffs to withdraw each admission.

¶ 104. The plaintiffs arguably submitted evidence to justify the withdrawal of their admission to request number two. The plaintiffs submitted evidence that, on April 11, 2001, April 26, 2001, and June 21, 2001, doctors made notes indicating signs of Ms. Luckett's consciousness and comprehension.

¶ 105. Conversely, plaintiffs did not submit any evidence of Ms. Luckett's consciousness or comprehension during the last half of 2001, or at any time in 2002, 2003, 2004, or 2005. Hence, there was no evidence submitted to justify the withdrawal of admission number one and no evidence submitted to justify the withdrawal of admission number three.

¶ 106. Plaintiffs' counsel repeatedly suggested that the trial would have to explore Ms. Luckett's consciousness up to her death, and the circuit court adopted that suggestion. Clearly, the court intended to

open up the entire period between September 29, 2000, and October 2, 2005, *a five year period*. The court stated as follows:

> This brief letter will serve to apprise you of my decision with respect to Mr. End's[, plaintiffs' counsel,] motion to withdraw his admission that Ms. Luckett was in a persistent vegetative state from late August, 2000, *until the time of her death*. . . . The admission acknowledged an inability on the part of Ms. Luckett to [refute proof that she was in a persistent vegetative state] during the period between late August, 2000 *and the time of her death*. . . . If, as the entries in the medical records referenced in this morning's arguments arguably indicate, Ms. Luckett was capable of and did experience pain and suffering for the extended period between the time she lapsed into a coma *to the time of her death*, it is appropriate for the jury to consider that fact . . . .

Letter from Judge Foley (emphasis added).

¶ 107. The circuit court's decision not only forced the defendants to face exposure for all of 2001, 2002, 2003, 2004, and nine months of 2005 but also justified its decision, in part, on consideration of pain and suffering during a period of time in 2000 (late August and most of September), when there was no admission of a persistent vegetative state requested and no admission given. This period in 2000 was already open to proof of pain and suffering.

¶ 108. In short, the court expanded the defendants' exposure to a claim of pain and suffering from roughly two months to approximately 60 months (October 2000 to September 2005), when there was no evidence proffered to support a conclusion that Ms. Luckett was not in a persistent vegetative state during

51 of those 60 months (July 2001 to September 2005) and at least one other fact was misunderstood.

¶ 109. In making its decision to permit withdrawal of admissions one and three, the court did not have any facts to justify withdrawal. The court could not have examined the relevant facts if there were *no facts* to examine.

¶ 110. The third deficiency in the circuit court's determination is that, after significantly expanding the defendants' period of exposure to damages, the court reached a decision that no reasonable judge could reach. The court commented as follows: "The [Wisconsin Patients Compensation] Fund . . . noted in their argument in opposition to the motion their concern with respect to significantly increased exposure. I don't view that as a pertinent consideration on the prejudice prong." *Id.* The circuit court did not give a legal reason for its answer. It gave a factual reason:

> If the plaintiff can establish [that] Ms. Luckett experienced pain and suffering during this period as a result of negligence on the part of any of the health care providers, damages should be awarded. If she did not, or if the plaintiff cannot adequately prove that she did, no damages will be awarded.

*Id.*

¶ 111. This answer completely misses the point. Noneconomic damages for pain and suffering are not a fixed amount unless there is a cap on them. Thus, no reasonable judge would open up defendants to an additional 51 months of exposure to unlimited noneconomic damages unless there were *facts* to justify that additional exposure. The plaintiffs submitted no such facts, yet the circuit court made its decision anyway.

470

¶ 112. In my view, and also in the view of the majority, the circuit court applied the wrong legal standard. The court also failed to examine the relevant facts in that there were no facts to support withdrawal of two of the three admissions. It misstated facts in its written decision in relation to August and September 2000, showing that it was operating under a misunderstanding. Finally, the court concluded that requiring the defendants to defend 30 times the period of exposure that they had to defend before the requested withdrawal was a factor that it could not even consider in assessing prejudice.

¶ 113. This was an erroneous exercise of discretion. When the majority disregards a court's multiple errors, it rewrites the law on erroneous exercise of discretion.

III

¶ 114. *Luckett v. Bodner* represents a perfect storm for defendants in a medical malpractice case.

¶ 115. The Wisconsin legislature imposed a cap on noneconomic damages in medical malpractice cases in 1995. *See* 1995 Wis. Act 10. Among other things, the legislature amended Wis. Stat. § 893.55(4) to limit total noneconomic damages for each occurrence in a medical malpractice case on or after May 25, 1995, to $350,000, which amount was to be adjusted at least annually to reflect changes in inflation measured by the consumer price index. *See* Wis. Stat. § 893.55(4)(d) (1997–98). The constitutionality of the cap was upheld in *Guzman v. St. Francis Hospital, Inc.*, 2001 WI App 21, ¶¶ 1, 25, 240 Wis. 2d 559, 623 N.W.2d 776. In July 2005, the cap stood at $445,755. This was the amount Ms. Luckett was

slated to receive, and it was likely the amount that the defendants would have conceded if their liability was established.

¶ 116. On July 14, 2005, the supreme court decided that this cap was unconstitutional. *Ferdon v. Wisconsin Patients Comp. Fund*, 2005 WI 125, ¶ 187, 284 Wis. 2d 573, 701 N.W.2d 440. Hence, the statute that existed and limited noneconomic damages in a medical malpractice case at the time when Ms. Luckett suffered injury no longer exists. A new statute has been enacted, but it was not effective until April 6, 2006, more than six months after Ms. Luckett's death. *See* 2005 Wis. Act 183. Consequently, there is no statutory limitation on noneconomic damages in this case.

¶ 117. Wisconsin Stat. § 895.04 is Wisconsin's wrongful death statute. The cap on nonpecuniary wrongful death damages in the case of a deceased adult is $350,000. Wis. Stat. § 895.04(4). This award covers "loss of society and companionship [and] may be awarded to the . . . children . . . of the deceased." *Id.*

¶ 118. In *Maurin v. Hall*, 2004 WI 100, ¶ 6, 274 Wis. 2d 28, 682 N.W.2d 866, this court determined that the noneconomic damages recoverable against health care providers for wrongful death in a medical malpractice case were limited to the statutory cap for noneconomic damages from wrongful death. This cap was in lieu of, not in addition to, the statutory cap on noneconomic damages for medical malpractice. *See id.* Significantly, the facts in *Maurin* involved a child who died less than 48 hours after the medical malpractice and was not conscious for most of that time. *Id.*, ¶¶ 10–13.

¶ 119. In *Bartholomew v. Wisconsin Patients Compensation Fund*, 2006 WI 91, ¶ 3, 293 Wis. 2d 38, 717 N.W.2d 216, the court overruled *Maurin*. The July 7, 2006 decision reflected a divided court on the ques-

tion of whether plaintiffs, like the plaintiffs here, can collect medical malpractice noneconomic damages *and* wrongful death noneconomic damages. *See id.*, ¶ 4.

¶ 120. *Ferdon* was the law of Wisconsin when the plaintiffs in this case made their admissions in July 2005. *Ferdon* and *Bartholomew* were the law in 2007 when the circuit court permitted the admissions to be withdrawn.

¶ 121. To sum up, under the law of Wisconsin on January 19, 2007, the circuit court knew that it was exposing the defendants to an award of unlimited noneconomic damages for pain and suffering over a potential five-year period. Yet, like the majority opinion, it refused to take that factor into account in evaluating prejudice.

¶ 122. The majority writes as follows: "We agree with the circuit court that the defendant's 'increased exposure . . . [is not] a pertinent consideration on the prejudice prong' of Wis. Stat. § 804.11(2)." Majority op., ¶ 70 (alteration and ellipsis in majority opinion). Then, the majority adds the following: "The defendants' increased exposure results from the defendants having to litigate a question (Ms. Luckett's capacity to experience conscious pain and suffering) that the defendants would have had to litigate in the absence of admissions." *Id.*

¶ 123. The latter statement is unsupported and plainly wrong. Had there been no admissions, the defendants would have forced the plaintiffs to go through the medical records 18 months sooner based on the defendants' interrogatories and request for production. The defendants' own experts also would have examined the records, and they would have been able and motivated to examine Ms. Luckett when it was still possible to do so. Almost certainly, the defendants

473

would have been able to reduce the period of exposure and would seriously have explored settlement. The case would not have come to this court.

## IV

¶ 124. Unique among discovery procedures, requests for admission under Wis. Stat. § 804.11 are used "to define and limit the controversy between parties to a lawsuit, thus freeing the court and the parties to concentrate on the matters at the heart of the dispute." Robert B. Corris and Mark M. Leitner, *Requests for Admission, in Wisconsin Discovery Law and Practice*, § 5.4 (Feb. 2006).[4] In 1962, Professor Ted Finman explained the importance of defining and limiting the issues in a law suit through the use of requests for admission:

---

[4] *See also Mucek v. Nationwide Commc'ns, Inc.*, 2002 WI App 60, ¶ 31, 252 Wis. 2d 426, 643 N.W.2d 98 ("The purpose of the admissions process 'is to expedite trial by establishing certain material facts as true . . . thus narrowing the range of issues for trial.' " (ellipsis in original) (quoting *Asea*, 669 F.2d at 1245)); Edwin E. Bryant, 4 *Wisconsin Pleading and Practice* § 31:44 (4th ed. 2003) ("The purpose of the admissions process is to expedite trial by establishing certain material facts as true, thus narrowing the range of issues for trial."); Jay E. Grenig, 3 *Wisconsin Practice Series: Civil Procedure* § 411.1 (3d ed. 2003) ("Section 804.11 is intended to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial, the truth of which is known to the parties or can be ascertained by reasonable inquiry."); Jay E. Grenig and Jeffrey S. Kinsler, 8 *Wisconsin Practice Series: Civil Discovery* § 12:61 (2d ed. 2005) ("The admissions serve to eliminate disputes of material fact . . . ."); Kinsler, *supra*, at 632 ("Requests for admission define and limit the controversy between parties to a lawsuit, freeing the court and the parties to concentrate on matters at the heart of the dispute.").

A definition of the controversy is essential. . . . A precise statement of the opposing contentions focuses the attention of the litigants and the tribunal on the critical questions. This permits the litigants to direct their necessarily limited investigative capacities to the determinative issues. . . . And, since obscurely defined questions sometimes cause erroneous decisions, a precise definition promotes an accurate and just resolution of the dispute.

A controversy should be limited as well as defined. It is self-evident, even in an adversary system, that contentions not subject to good faith dispute should be resolved through concession rather than by submission to a judge or jury. . . . [W]hen a contention cannot be honestly and reasonably disputed, the adversary approach delays and even endangers a just resolution of the case. . . .

Through such definition and limitation, admissions promote both efficiency and economy in resolving disputes. If a point is conceded, litigants need not expend effort in investigations concerning it nor incur expense in presenting evidence to prove it. Judicial administration is also aided. Admissions reduce the time required to try a case. . . . Finally, admissions encourage litigants to evaluate realistically the hazards of trial and thus tend to promote settlements.

Ted Finman, *The Request for Admissions in Federal Civil Procedure*, 71 Yale L.J. 371, 375–76 (1962) (internal footnotes omitted).[5]

[5] *See also* Kinsler, *supra*, at 633

No suit can be tried without some definition of its factual and legal boundaries. A definition of the controversy is essential. Admissions facilitate the defining of a controversy by eliminating issues from the case that are not in controversy and by narrowing those issues that are in controversy. . . .

¶ 125. The reason requests for admission are so effective in defining and limiting the issues in a controversy is because, unlike other forms of discovery, such as depositions and interrogatories, "matter[s] admitted under [Wis. Stat. § 804.11 are] conclusively established unless the court on motion permits withdrawal or amendment of the admission." Wis. Stat. § 804.11(2).[6] In fact, because admissions are considered "conclusively established" once made, they supersede the pleadings. Jay E. Grenig and Jeffrey S. Kinsler, 8 *Wisconsin*

> A controversy should be limited as well as defined. Contentions not subject to good faith dispute should be resolved through concession rather than by submission to a judge or jury. When a contention cannot be honestly and reasonably disputed, the adversarial approach delays and even endangers a just resolution of the issues. Limiting the controversy promotes efficiency and economy in civil litigation, resulting in lower costs for clients and lawyers.

(Internal footnotes omitted.)

[6] *See also Estate of Hegarty v. Beauchaine*, 2006 WI App 248, ¶ 38, 297 Wis. 2d 70, 727 N.W.2d 857 ("When a party responds to a request for an admission by admitting a matter, the admission conclusively establishes the issue, unless the court permits withdrawal.") (citing Wis. Stat. § 804.11(2)); Bryant, *supra*, § 31:50 ("Unless the court on motion permits withdrawal or amendment of the admission, any matter admitted under the statute is conclusively established."); Robert B. Corris and Mark M. Leitner, *Requests for Admission, in Wisconsin Discovery Law and Practice*, § 5.10 (Feb. 2006) ("Perhaps the most significant fact about requests for admissions is that, with very few exceptions, a response that admits the matter requested conclusively puts that matter to rest."); Grenig, *supra*, § 411.5 ("A matter admitted under Section 804.11 is conclusively established, unless the court permits withdrawal or amendment of the admission."); Kinsler, *supra*, at 657 ("Any matter admitted under section 804.11 is conclusively established, unless the court permits withdrawal or amendment of the admission.").

*Practice Series: Civil Discovery* § 12:61 (2d ed. 2005); Jeffrey S. Kinsler, *Requests for Admission in Wisconsin Procedure: Civil Litigation's Double-Edged Sword*, 78 Marq. L. Rev. 625, 657 (1995).

¶ 126. As a result, " 'the party securing admissions [may] rely on their binding effect.' " *Schmid*, 111 Wis. 2d at 236 n.4 (quoting *Rainbolt v. Johnson*, 669 F.2d 767, 768 (D.C. Cir. 1981)).[7] "This binding effect [is what] sets requests for admission apart from all other discovery procedures and, in effect, places such admissions on par with judicial admissions." Kinsler, *supra*, at 657.

¶ 127. Considering this binding effect, counsel faced with a request for admission must provide a deliberate, " 'studied response.' " Grenig and Kinsler, *supra*, § 12:61 (quoting *McSparran v. Hanigan*, 225 F. Supp. 628, 637 (E.D. Pa. 1963)); *see also* Finman, *supra*, at 421 ("[T]he procedure through which a party becomes bound [is not] 'technical.' Admissions are not the result of inadvertence or inattention to procedural niceties but of a litigant's deliberate, conscious choice.");

---

[7] *See also* Corris and Leitner, *supra*, § 5.10 ("[S]ection 804.11 permits the party securing admissions to rely on their binding effect.") (internal quotations omitted); Grenig, *supra*, § 411.5 ("The party securing admissions may rely on the binding effect of the admissions."); Grenig and Kinsler, *supra*, § 12:61 ("The requesting party is entitled to rely on the binding effect of the admission."); Kinsler, *supra*, at 657 ("The party securing admissions may rely on the binding effect of the admissions."). In addition, the Advisory Committee Notes on the 1970 amendments to Federal Rule of Civil Procedure 36 state that the amendments clarify "the binding effect of an admission." *See* Ted Finman, *The Request for Admissions in Federal Civil Procedure*, 71 Yale L.J. 371, 418 n.188 (1962) ("It seems likely that the draftsmen of the Rules intended admissions to be binding and conclusive.").

Kinsler, *supra*, at 657 ("An answer to a request . . . is . . . a studied response, made under sanctions against easy denials . . . ."). In particular, "[t]he more harmful the impact an admission may have upon a case, the more scrutiny an attorney should devote to uncovering objections or drafting good-faith qualifying answers or denials." Kinsler, *supra*, at 647. If counsel is careless or inattentive in making the admission, "it would be neither fair nor just to" allow withdrawal of the admission "at the risk of harming [the] opponent" who reasonably relied on the admission's binding effect. Finman, *supra*, at 424.

¶ 128. If counsel makes a mistake in responding to a request for admission, the circuit court has authority to grant withdrawal of the admission, but "*only if* 'the merits of the action will be subserved' *and* if the party who benefits from the admission 'fails to satisfy the court that withdrawal . . . will prejudice' the benefitting party."[8] *Mucek*, 252 Wis. 2d 426, ¶ 26 (quoting Wis. Stat. § 804.11(2)) (emphasis added and ellipsis in original). However, "courts should be cautious in permitting the withdrawal . . . of admissions." Grenig and Kinsler, *supra*, § 12:71; Kinsler, *supra*, at 657.[9] In fact,

---

[8] Circuit courts have discretionary authority to permit withdrawal of a litigant's response to a request for admission, but that discretion must be exercised within the two-prong test set forth in Wis. Stat. § 804.11(2). *Estate of Hegarty*, 297 Wis. 2d 70, ¶ 38; Corris and Leitner, *supra*, § 5.24; Grenig and Kinsler, *supra*, § 12:71; Kinsler, *supra*, at 662. A circuit court's discretionary decision is to be upheld if it "examined the relevant facts, applied a proper standard of law, and, demonstrating a rational process, reached a conclusion that a reasonable judge could reach." *Mucek*, 252 Wis. 2d 426, ¶ 25 (citing *Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982)).

[9] *See also* Finman, *supra*, at 422

doubt over whether to allow withdrawal "should be resolved against the party seeking withdrawal, since the opposite approach would undermine reliance on admissions." Finman, *supra*, at 423 n.205. Professor Finman even suggests that "a showing of exceptional circumstances should always be required" for a court to allow withdrawal of an admission. *Id.* at 426.

¶ 129. Moreover, under Wis. Stat. § 804.11, courts generally apply a broad standard when determining whether prejudice exists in a particular case.[10] Grenig and Kinsler, *supra*, § 12:71 ("The courts have applied a somewhat liberal standard in determining the existence of prejudice."); Kinsler, *supra*, at 663 (same). Specifically, "*any adverse effect on a litigant's 'general preparation' of an aspect of its case caused by belated . . . withdrawal of admissions may constitute prejudice.*" Corris and Leitner, *supra*, § 5.24 (quoting *Schmid*, 111

---

Easy withdrawal . . . would make reliance on admissions impossible and thus would tend to destroy the value of [Federal Rule of Civil Procedure] 36. Consequently, though courts should have power to grant relief, the rules regulating this matter should be designed to prevent injudicious exercise of that power.

*. . . If a decision permitting withdrawal would make lawyers reluctant to rely on admissions, relief should be denied.*

(Emphasis added.)

[10] In the context of Wis. Stat. § 804.11, prejudice "relates to the difficulty a party may have in proving its case because of a sudden need to obtain evidence supporting the matter previously admitted." Corris and Leitner, *supra*, § 5.24; *see also* Grenig and Kinsler, *supra*, § 12:71; Kinsler, *supra*, at 662. In other words, "[p]rejudice means more than an adverse effect on the requesting party's case," Kinsler, *supra*, at 663, or "that the party who obtained the admission now has to convince the jury of" the truth of the matter previously admitted, *Bergemann v. United States*, 820 F.2d 1117, 1121 (10th Cir. 1987).

Wis. 2d at 239 (emphasis added)); Jay E. Grenig, 3 *Wisconsin Practice Series: Civil Procedure* § 411.5 (3d ed. 2003); Grenig and Kinsler, *supra*, § 12:71; Kinsler, *supra*, at 662–63; *see also* Finman, *supra*, at 422.

¶ 130. Typically, "[p]rejudice stems from the requesting party's reliance on the binding effect of the admission." Grenig and Kinsler, *supra*, § 12:71; Kinsler, *supra*, at 662.[11] In fact, prejudice is most likely to be found in cases where trial is imminent and the party benefitting from the admission forgoes discovery on the matter admitted. Corris and Leitner, *supra*, § 5.24; Grenig and Kinsler, *supra*, § 12:71; Kinsler, *supra*, at 663.[12] In such a situation, allowing the withdrawal of an admission would likely result in delay or adjournment of the trial, added time and cost for additional discovery, and possibly a much more costly search for evidence or witness testimony, all of which have been found to be prejudicial. *See* Kinsler, *supra*, at 663.[13]

---

[11] *See also* Finman, *supra*, at 422 ("If a decision permitting withdrawal would make lawyers reluctant to rely on admissions, relief should be denied.").

[12] *See also* Finman, *supra*, at 422

> Evidence available at one stage of a case may be unavailable at a later date. Consequently a party who assumes that an admission has eliminated the need for evidence can be prejudiced by its withdrawal. He may be unable to obtain evidence that was previously available to him. Clearly, if a court concludes that withdrawal would cause prejudice to a party who has relied on the admission, withdrawal should be denied.

[13] *See also Estate of Hegarty*, 297 Wis. 2d 70, ¶¶ 39–40 (deciding that prejudice would result if the withdrawal was allowed in light of the following facts: (1) the party relying on the admission operated under the assumption that the admitted matter was not an issue and conducted no discovery on it, and (2) there would need to be "a substantial amount of new discovery" that would "caus[e] additional delays in an already

¶ 131. In this case, the prejudice that will result from allowing the plaintiffs to withdraw their admissions is conspicuously obvious. As Judge Fine stated in his dissent in the court of appeals, "The prejudice to the defendants here is palpable and outrageous." *Luckett v. Bodner*, No. 2007AP308, unpublished slip op., ¶ 29 (Wis. Ct. App. April 22, 2008) (Fine, J., dissenting).

¶ 132. When the circuit court decided to allow the withdrawal of the three admissions, it knew the prejudicial consequences of its ruling. The projected three-week trial scheduled for February 5, 2007, would have to be rescheduled. This would cause additional delay in a case that had been ongoing since December 5, 2003, and had already been bumped once the year before. This was prejudice in and of itself because it delayed the final disposition of the matter, it caused an increase in costs, and it disrupted the judicial process.[14] Judge Foley recognized this in his letter to the parties granting the request to withdraw the admissions. Letter from Judge Foley, *supra* ("[R]esultant adjournment and

---

very long process"); *Mucek*, 252 Wis. 2d 426, ¶ 32 n.8 ("An adjournment of the trial and the need to again attempt discovery would itself constitute prejudice to [the party relying on the admissions]." (citing *EEOC v. Jordan Graphics, Inc.*, 135 F.R.D. 126, 128–29 (W.D.N.C. 1991))).

[14] *Estate of Hegarty*, 297 Wis. 2d 70, ¶ 40 ("If the amendment would have been allowed . . . this late in the game, . . . logically a substantial amount of new discovery would have been required, causing additional delays in an already very long process. . . . [T]he judicial process itself[] would have been prejudiced." (internal quotations omitted)); *Mucek*, 252 Wis. 2d 426, ¶ 32 n.8 ("An adjournment of the trial and the need to again attempt discovery would itself constitute prejudice . . . ."); Kinsler, *supra*, at 663 ("Prejudice has been found when the withdrawal . . . will require a delay of the trial or additional discovery.").

additional discovery is sufficient to establish prejudice so as to justify denial of the request to withdraw an admission.") (citing *Mucek*, 252 Wis. 2d 426, ¶ 32 n.8).

¶ 133. Approving the circuit court's decision now confirms and exacerbates this prejudice. The defendants will be required "to undertake a lengthy, laborious and costly search for additional evidence," regarding whether Ms. Luckett was in a persistent vegetative state and when she entered that state. Grenig and Kinsler, *supra*, § 12:71.[15] This is not to say that, if plaintiffs' counsel would have denied the requests for admission in July 2005, the defendants would not have had to undertake such a search for this evidence. They would have done so immediately, which is evidenced by the interrogatories and request for production included with the requests for admission. *See, supra*, ¶ 9 n.2. However, having to undertake that search for evidence now, as opposed to July 2005, significantly prejudices the defendants for several reasons. First, Ms. Luckett passed away on October 2, 2005, more than two months after the admissions were made. Therefore, the defendants were unable in January 2007 and are unable now to conduct an independent, physical examination of Ms. Luckett so that their expert or experts can opine on her

---

[15] *See, e.g., Weva Oil Corp. v. Belco Petroleum Corp.*, 68 F.R.D. 663, 666–67 (N.D. W. Va. 1975)

> From the record before the court, it can be ascertained that while the introduction of such evidence could in all probability be accomplished, the task would be lengthy, laborious and extremely costly to Belco. In considering the weight of prejudice in such circumstances, the court must not treat lightly such burdens when visited upon a litigant, especially when that litigant has properly utilized the [Federal] Rules of Civil Procedure to advance his litigation toward a just, speedy, and inexpensive conclusion.

(Internal ellipses, quotations, and citation omitted.)

482

neurological status and any other matters of significance concerning a claim for conscious pain and suffering.[16]

¶ 134. Second, the defendants' expert witness, retained to analyze Ms. Luckett's persistent vegetative state,[17] was called-off after the admissions were made.

[16] Both the majority and concurring opinions argue that "[t]he defendants offer no evidence or argument that a medical examination of Ms. Luckett between July and October 2005 would have enabled [the defendants' expert] or any other medical examiner to evaluate Ms. Luckett's condition from September 29, 2000, through July 22, 2005." Majority op., ¶ 62; *see also* concurring op., ¶¶ 76, 78–79. This argument fails to appreciate that the circuit court allowed withdrawal of all three admissions, which covers the period of time from July 22, 2005, the date of the admissions, through October 2, 2005, the date of Ms. Luckett's death. Certainly, if the requests for admission were denied in July 2005, the defendants could have undertaken an independent medical examination of Ms. Luckett to determine whether she was currently in a persistent vegetative state and whether her condition was permanent.

Moreover, the majority and concurring opinions hold defendants' counsel to an unreasonably high standard. It must be remembered that the first notice of the motion to withdraw the admissions came less than 24 hours before the hearing. Counsel can hardly be expected to have formulated highly technical medical arguments for what an expert could or could not do in evaluating Ms. Luckett if given the opportunity in July 2005. Counsel did the best they could under the circumstances by making the obvious point that their ability to defend against a claim of conscious pain and suffering was impaired by the fact that the patient was no longer living when withdrawal of the admissions was permitted.

[17] The defendants had retained the preeminent medical expert regarding persistent vegetative states, Dr. Ronald Cranford. Dr Cranford is well-known for his commentary on the Terri Schiavo matter in 2005. *See, e.g.*, Ginia Bellafante, *The*

Since that time, the widely recognized expert witness also passed away. This will require that the defendants find and retain a new expert or experts who must start the analysis from the beginning without any knowledge of the case, thus increasing the defendants' costs. This constitutes prejudice because it "relates to the difficulty [the defendants will] have in proving [their] case because of a sudden need to obtain evidence supporting the matter previously admitted." Corris and Leitner, *supra*, § 5.24; *see also* Grenig and Kinsler, *supra*, § 12:71; Kinsler, *supra*, at 662.

¶ 135. Finally, because the defendants never focused on whether Ms. Luckett was in a persistent vegetative state—it was assumed all along that she was—they may be required to re-depose many, if not all the witnesses who cared for or treated Ms. Luckett. This is yet another example of the prejudice that will result from allowing the withdrawal of these admissions. *See* Corris and Leitner, *supra*, § 5.24 ("[A] party is prejudiced when trial is imminent and the party, in reliance on its opponents' admissions, has forgone discovery that would have explored facts established by the admissions."); Grenig and Kinsler, *supra*, § 12:71 (same); Kinsler, *supra*, at 663 (same).

¶ 136 In addition, as noted, permission to withdraw the admissions greatly increased the defendants' exposure in terms of time (from two months to more than 60 months) and in terms of noneconomic damages. *See, supra*, ¶¶ 114–23. Defendants' various counsel told the

*Power of Images to Create a Cause*, N.Y. Times, March 27, 2005, at 3; Benedict Carey and John Schwartz, *Most Experts Say They See Little Chance of Recovery*, N.Y. Times, March 26, 2005, at 9; John Schwartz and Denise Grady, *A Diagnosis With a Dose Of Religion*, N.Y. Times, March 24, 2005, at 20. Dr. Cranford passed away on May 31, 2006.

circuit court that withdrawal "impacts the damages in this case," "turns this case . . . upside down at this stage," "potentially changes the value of [this] case by millions of dollars,[18]" and "dramatically affects the positions of the insurance companies and Fund." To deny the prejudicial effect of these withdrawals is to deny reality.[19]

¶ 137. Furthermore, counsel for one of the defendants complained that there was no excusable neglect. The motion to withdraw the previously made admissions was not motivated by the discovery of new evidence. Instead, the basis for the motion to withdraw the

---

[18] Attorney Paul Grimstad for the defense also made the following statement to the circuit court:

> We have, in fact, relied upon these admissions as we prepared this case for trial. Not only relied upon them as part of our preparation but we have reported to our respective clients when we have been asked to analyze, to evaluate, this case in terms of potential value. We have used those admissions as part of our evaluation . . . .

[19] *See Zimmermann v. Cambridge Credit Counseling Corp.*, 529 F. Supp. 2d 254, 268 (D. Mass. 2008) ("If Defendants' attempt to withdraw their admissions is . . . a change in litigation strategy . . . it would betray the underlying purpose of [requests for admission] to allow withdrawal of these admissions when discovery has been conducted and motions have been prepared in reliance on a particular legal theory."); *Branch Banking and Trust Co. v. Deutz-Allis Corp.*, 120 F.R.D. 655, 659 (E.D.N.C. 1988):

> When a party directs its resources, fiscal, physical and otherwise, to those issues it reasonably believes are the only ones left to be resolved, an abrupt change in the status of the litigation occasioned by motion of opposing counsel, which had it occurred early on would likely have effected a distinctly different allocation of resources, should only be allowed upon a showing that the [Federal Rule of Civil Procedure] 36(b) Test is met by clear and convincing evidence.

admissions was four notes created in April and June 2001, which were in the plaintiffs' counsel's possession long before he responded affirmatively to the requests for admission. As Professor Finman stated, "Admissions are not the result of inadvertence or inattention to procedural niceties but of a litigant's deliberate, conscious choice." Finman, *supra*, at 421. It is hard to excuse the neglect of a party that made these key admissions without first examining existing records in its possession or conferring with pertinent health care providers at Silver Spring Health and Rehabilitation Center. *See* Kinsler, *supra*, at 647 ("The more harmful the impact an admission may have upon a case, the more scrutiny an attorney should devote to uncovering objections or drafting good-faith qualifying answers or denials."). Given counsel's oversight, "it would be neither fair nor just to protect [the plaintiffs] at the risk of harming" the defendants who reasonably relied on the admissions. Finman, *supra*, at 424.

¶ 138. It should be noted that Judge Foley was concerned at the January 19, 2007 hearing that delaying the trial might remove him from the case. In fact, unless special arrangements are made, Judge Foley will not handle this case on remand because of judicial rotation. Additionally, Attorney Paul Grimstad, counsel for Dr. Bodner and Physician's Insurance Company of Wisconsin, like Ms. Luckett and the expert witness, has now passed away. The ill-advised and unsupported decision of the circuit court essentially nullified years of work and vast amounts of money at the expense of the defendants.

¶ 139. The circuit court's conclusion is not one that a reasonable judge could have made after considering the relevant facts and applying the proper standard of law. It is not supported by the record. Therefore,

this court should remand this case to the circuit court for a determination of prejudice.

¶ 140. Finally, in order for requests for admission to continue to play a useful and effective role in pretrial discovery, parties must be able to rely upon the binding effect of the admissions once they are made. Therefore, admissions must be difficult to withdraw. Otherwise, lawyers may stop making requests for admission, causing needless litigation, costly discovery, and less-efficient trial practice. The majority opinion in this case makes it altogether too easy for parties to withdraw their previously made admissions. In so doing, the majority tacitly diminishes the value and effectiveness of requests for admission in civil practice.

## V

¶ 141. The majority refuses to remand this matter for a new hearing on the plaintiffs' request to withdrawal the three admissions. In light of that decision and multiple other factors discussed herein, I respectfully dissent.