COURT OF APPEALS
DECISION
DATED AND FILED

July 22, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1129**

STATE OF WISCONSIN

Cir. Ct. No. 2023CV1375

IN COURT OF APPEALS
DISTRICT III

PLAZA SERVICES LLC,

   PLAINTIFF-RESPONDENT-CROSS-APPELLANT,

V.

KIMBERLY BURTON,

   DEFENDANT-APPELLANT-CROSS-RESPONDENT.

---

APPEAL and CROSS-APPEAL from an order of the circuit court for Brown County: THOMAS J. WALSH, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

¶1   STARK, P.J.  Kimberly Burton appeals, and Plaza Services LLC cross-appeals, from the circuit court's order granting Plaza's motion to dismiss Burton's counterclaims.  In an issue of first impression involving the Wisconsin Consumer Act (the WCA), Burton asks this court to interpret WIS. STAT.

§ 425.104(1)(k) (2023-24)[1] consistent with 15 U.S.C. § 1692e(3), which has been held to require that an attorney have "meaningful involvement" in the preparation of communications attempting to collect a debt under the Fair Debt Collection Practices Act (the FDCPA). Thus, Burton seeks a decision as to whether a federal meaningful involvement claim is cognizable under § 425.104(1)(k). Based on our review of the plain language of the statute, we conclude that § 425.104(1)(k) does not mirror the language in § 1692e(3). Therefore, a meaningful involvement claim is not viable under the WCA.

¶2    Burton also asks us to determine whether a curable procedural violation of the pleading requirements under WIS. STAT. § 425.109 supports a cause of action under WIS. STAT. ch. 427 and whether an alleged failure to give notice of the right to cure default and/or notice of assignment before filing suit can support an FDCPA claim. We agree with the circuit court's conclusion that these issues were resolved by our supreme court in *Security Finance v. Kirsch*, 2019 WI 42, 386 Wis. 2d 388, 926 N.W.2d 167.[2] Accordingly, we affirm the circuit court's order.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[2] In Plaza's cross-appeal, it argues that Burton's counterclaims under WIS. STAT. ch. 425 fail to state a claim because they are limited to creditor actions, and Plaza is not a creditor as defined by the WCA. Thus, Plaza's cross-appeal is more akin to an alternative basis for us to affirm the circuit court's dismissal of Burton's ch. 425 counterclaims in this case, rather than a true cross-appeal. According to Plaza, "[u]nder the WCA, a 'creditor' is defined as a 'merchant who regularly engages in a consumer credit transaction[] or in arranging for the extension of consumer credit by or procuring consumer credit from 3rd persons.'" *See* WIS. STAT. § 421.301(16). Plaza explains that because it is a debt purchaser, it "does not regularly engage in any of the … activities that would make it a 'creditor' because it is not a creditor."

(continued)

## BACKGROUND

¶3 On September 27, 2023, Plaza[3] commenced a small claims action against Burton, seeking to recover a defaulted consumer debt in the amount of $1,821.98. On November 6, 2023, Plaza filed a motion to dismiss its complaint with prejudice, and the circuit court entered an order of dismissal.

¶4 Before Plaza's complaint was dismissed, Burton filed an answer and counterclaims, in which she alleged violations of the WCA and the FDCPA. Based on the large number of cases filed by Plaza's counsel in Wisconsin courts, Burton alleged that counsel "was not meaningfully involved in the preparation or consideration of the demand and the complaint, and thus the [demand] letter and complaint were not truly 'authorized' by [counsel] in any meaningful way." According to Burton, this purported lack of meaningful involvement in the small claims action was a violation of WIS. STAT. § 427.104(1)(k), which states that "a debt collector may not" "[u]se a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney-at-law when it is not."

¶5 In Burton's next counterclaim, she alleged that Plaza violated WIS. STAT. § 425.109 by failing to include required information in its complaint,

---

Given that we are affirming the circuit court's decision to grant Plaza's motion to dismiss on other grounds, we conclude that it is not necessary to resolve the question of whether Plaza is a creditor pursuant to the WCA. *See **Turner v. Taylor***, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (noting that we need not address all issues when the resolution of one of those issues is dispositive); ***State v. Blalock***, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground."). We will not address Plaza's cross-appeal further.

[3] Plaza is an assignee of Burton's previous creditor.

including "the figures necessary to determine the amount owed" and "detailed specific information about the exact default." Further, Burton alleged that Plaza's "failure to include required information" was "intentional or willful" because Plaza and its counsel are "serial filer[s] in Wisconsin and know[] or should know of the pleading requirements in Wisconsin."

¶6    Lastly, Burton argued that Plaza violated the FDCPA by filing suit against Burton without first providing Burton with a statutorily compliant notice of Burton's right to cure or notice of assignment under WIS. STAT. §§ 425.104, 425.105, and 422.409. According to Burton, Plaza's conduct in that regard violated the FDCPA "by falsely and misleadingly claiming a right to payment in full and to sue when no such right exists, by constituting harassing and abusive conduct, and by constituting an unfair or unconscionable collection practice."

¶7    Plaza responded with a motion to dismiss Burton's counterclaims based upon a failure to state a claim upon which relief could be granted. Thereafter, Burton filed an amended answer and counterclaims. Plaza subsequently filed a motion to dismiss Burton's amended counterclaims, which was essentially an amended motion to dismiss. The circuit court held a nonevidentiary hearing on the motion, and it thereafter granted dismissal by a comprehensive written decision and order.

¶8    In its decision, the circuit court first concluded that Burton's meaningful involvement claim failed. According to the court, "Wisconsin courts have never recognized an extension of this principle akin to the meaningful involvement doctrine at federal common law." The court found that Plaza's counsel "'authorized' Plaza's complaint against Burton when [counsel] placed his

signature on the complaint" and that counsel's "signature is all the proof of authorization that is required" under WIS. STAT. § 427.104(1)(k).

¶9     The circuit court also determined that Burton's counterclaim under WIS. STAT. § 425.109 failed.  According to the court, "the state of the law in Wisconsin regarding the availability of a damages action predicated upon procedural defects … was clearly addressed by the Wisconsin Supreme Court in" *Kirsch*, where our supreme court determined that "a creditor's failure to provide [notice of the right to cure] does not constitute a sufficient basis for relief under [WIS. STAT.] ch. 427." *See Kirsch*, 386 Wis. 2d 388, ¶31.

¶10    Finally, the circuit court concluded that Burton's claim based on alleged violations of the FDCPA was also disposed of by the *Kirsch* decision.  The court explained that, as discussed in *Kirsch*, "a creditor does not claim a right to payment that does not exist when that claim fails to be accompanied by the satisfaction of procedural requirements like providing notices of default and assignment." *See id.*, ¶22.

¶11    Burton appeals, and Plaza cross-appeals.

## DISCUSSION

¶12    On appeal, Burton argues that the circuit court erred by granting Plaza's motion and dismissing her counterclaims.  First, she disagrees with the court's interpretation of WIS. STAT. § 427.104(1)(k) and argues that the statute must be interpreted "in such a way as to coordinate it with" the FDCPA.  Burton also argues that our supreme court's holding in *Kirsch* "should not be seen as controlling."  Accordingly, Burton contends that the circuit court dismissed her counterclaims in error and that we should reverse the court's decision and allow

her counterclaims to proceed. For the reasons that follow, we reject Burton's arguments and affirm the circuit court's order.

¶13 Whether a complaint or a counterclaim "states a claim upon which relief can be granted is a question of law for our independent review; however, we benefit from discussions of the … circuit court." *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693. When reviewing a motion to dismiss, we accept all factual allegations in the complaint or counterclaim as true. *Id.*, ¶18. However, "legal conclusions stated in the complaint are not accepted as true, and they are insufficient to enable a complaint to withstand a motion to dismiss." *Id.*, ¶19.

¶14 This case requires us to interpret and apply the WCA. "The interpretation and application of a statute present questions of law that this court reviews de novo while benefitting from" the circuit court's analysis. *State v. Alger*, 2015 WI 3, ¶21, 360 Wis. 2d 193, 858 N.W.2d 346. The purpose of statutory interpretation "is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.

¶15 Our statutory interpretation analysis starts with the language of the statute. *Id.*, ¶45. "If the meaning of the statute is plain, we ordinarily stop the inquiry." *Id.* "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* The statutory language is also "interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46. If this analysis

results in a plain and clear statutory meaning, "then there is no ambiguity and the statute is applied according to this ascertainment of its meaning." *Id.* (citation omitted).

## I. Meaningful involvement claim

¶16 The WCA protects consumers from "unfair, deceptive, false, misleading and unconscionable practices by merchants," and its provisions must "be liberally construed and applied to promote their underlying purposes and policies." WIS. STAT. § 421.102(1)-(2). Those underlying purposes and policies include: (1) simplifying, clarifying, and modernizing "the law governing consumer transactions"; (2) protecting "customers against unfair, deceptive, false, misleading and unconscionable practices by merchants"; (3) permitting and encouraging "the development of fair and economically sound consumer practices in consumer transactions"; and (4) coordinating "the regulation of consumer credit transactions with the policies of the federal consumer credit protection act." Sec. 421.102(2)(a)-(d).

¶17 Burton's first argument specifically advocates for the coordination of the WCA with the FDCPA. In particular, 15 U.S.C. § 1692e(3) of the FDCPA provides that "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney" violates the FDCPA. A claim alleging a violation of this provision is often referred to as a meaningful involvement claim. As the Seventh Circuit Court of Appeals has explained, a communication that purports to be from an attorney "implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action"; therefore, if the communication "is not the product of the attorney's professional judgment," then the communication "is misleading"

7

and violates § 1692e.  ***Nielsen v. Dickerson***, 307 F.3d 623, 635 (7th Cir. 2002) (quoting ***Avila v. Rubin***, 84 F.3d 222, 229 (7th Cir. 1996)).

¶18    According to Burton, WIS. STAT. § 427.104(1)(k) "is the WCA equivalent" of 15 U.S.C. § 1692e(3).  Burton argues that "[b]oth sections prohibit the same conduct: Falsely representing the level of an attorney's involvement in a matter."  Accordingly, Burton alleges that Plaza's counsel was not meaningfully involved in the decision to send her demand letters and file the small claims action against her, which was a violation of § 427.104(1)(k).  In support of her position, Burton outlines her belief that Plaza's counsel's "heavy case load" prevented counsel from being meaningfully involved in her case, and she presents the details of that case load, including the number of counsel's case filings and court appearances during a stated time period.

¶19    Burton admits that "[n]o Wisconsin Court has ever interpreted [WIS. STAT. §] 427.104(1)(k)."  "However," she argues, "the [WCA] is to be interpreted in such a way as to coordinate it with 'the policies of the federal consumer credit protection act.'"  *See* WIS. STAT. § 421.102(2)(d).  As a result, Burton advocates for us to adopt the federal court interpretation of 15 U.S.C. § 1692e(3) and apply it to claims arising under § 427.104(1)(k).  According to Burton, "[n]umerous courts," which are outside our jurisdiction, "have held that communications with debtors in which a lawyer was not meaningfully involved violated the FDCPA." *See, e.g.*, ***Avila***, 84 F.3d at 228-29; ***Consumer Fin. Prot. Bureau v. Frederick J.***

*Hanna & Assocs., P.C.*, 114 F. Supp. 3d 1342, 1363-66 (N.D. Ga. 2015) (collecting cases).[4]

¶20　Like the circuit court before us, we reject Burton's proposal that we become the first Wisconsin court to recognize a meaningful involvement theory of recovery under WIS. STAT. § 427.104(1)(k).  Beginning with the plain language of § 427.104(1)(k), that paragraph prohibits the "[u]se [of] a communication … which gives the appearance of being authorized, issued or approved" by an attorney "when it is not."

¶21　Considering the specific words used by the legislature, "appearance" means an "external show" or an "outward indication." *Appearance*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/appearance (last visited July 16, 2025).  "Authorized" and "approve" mean "sanctioned by authority: having or done with legal or official approval" and "to give formal or official sanction," respectively. *Authorized*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/authorized (last visited July 16, 2025); *Approve*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/approve (last visited July 16, 2025). Within those definitions, "sanction" means "to give effective or authoritative approval or consent to." *Sanction*, MERRIAM-WEBSTER DICTIONARY,

---

[4] Further, after briefing had completed in this case, Burton filed a letter with this court under WIS. STAT. RULE 809.19(10), notifying this court of a decision by an arbitrator in American Arbitration Association Case No. 01-24-0005-8421.  Given that our decision on the application of the meaningful involvement doctrine under Wisconsin law is based on the plain language of WIS. STAT. § 427.104(1)(k), we do not find an arbitrator's decision persuasive on the subject.

9

https://www.merriam-webster.com/dictionary/sanction (last visited July 16, 2025). Finally, "issue" means "to put forth or distribute usually officially." *Issue*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/issue (last visited July 16, 2025).

¶22    Thus, the import of WIS. STAT. § 427.104(1)(k) is clear: a debt collector may not falsely represent that a communication is officially or formally approved, distributed, or consented to by an attorney. As the circuit court accurately explained,

> The legislature's motivation for enacting such a provision is self-evident. Debtors may be intimidated by the perceived legitimacy afforded to a debt-collection effort that is undertaken with the assistance of counsel. If counsel is, in fact, not actually involved in the effort, that perception and the accompanying intimidating effect is wholly inappropriate and can only serve to frustrate consumer protection law.

¶23    The meaningful involvement requirement found in 15 U.S.C. § 1692e cannot likewise be read into WIS. STAT. § 427.104(1)(k) because the language of the FDCPA and the WCA are not the same. As noted above, § 1692e(3) prohibits "[t]he false representation" as well as the "implication" "that any communication is from an attorney." *See also **Janetos v. Fulton Friedman & Gullace, LLP***, 825 F.3d 317, 324 (7th Cir. 2016) ("Portions of § 1692e are drafted in broad terms, prohibiting the use of 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'"). However, § 427.104(1)(k) neither incorporates nor suggests a similar "implication." We agree with Plaza that "[t]he absence of language prohibiting the false implication of attorney involvement confirms [that] the Wisconsin legislature did not intend to impose such a standard."

¶24 Had the Wisconsin Legislature intended that WIS. STAT. § 427.104(1)(k) be read coextensively with 15 U.S.C. § 1692e(3), it could have used different terms or mirrored the language in § 1692e(3) and precluded the implication of an attorney's involvement as well. The legislature failed to do so. *See Dawson v. Town of Jackson*, 2011 WI 77, ¶42, 336 Wis. 2d 318, 801 N.W.2d 316 ("We decline to read into the statute words the legislature did not see fit to write."); *see also County of Dane v. LIRC*, 2009 WI 9, ¶33, 315 Wis. 2d 293, 759 N.W.2d 571 ("We will not read into the statute a limitation the plain language does not evidence.").

¶25 Therefore, we are unpersuaded by Burton's argument that we should essentially read language into WIS. STAT. § 427.104(1)(k) merely because the WCA is to be construed to coordinate with the regulations under the FDCPA. *See* WIS. STAT. § 421.102(2)(d); *see also Kieninger v. Crown Equip. Corp.*, 2019 WI 27, ¶27, 386 Wis. 2d 1, 924 N.W.2d 172 ("[T]he federal judiciary can, and often does, provide helpful insights when it analyzes federal provisions analogous to our own. They may not, of course, make any binding pronouncements on the meaning of Wisconsin's laws." (citations omitted)); *McMullen v. LIRC*, 148 Wis. 2d 270, 275-76, 434 N.W.2d 830 (Ct. App. 1988) ("[W]e will construe [the statute] in accordance with our legislature's intention rather than with the intention of other jurisdictions."). *But see Luckett v. Bodner*, 2009 WI 68, ¶29, 318 Wis. 2d 423, 769 N.W.2d 504 ("When 'a state rule mirrors the federal rule, we consider federal cases interpreting the rule to be persuasive authority.'" (citation omitted)); *First Wis. Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 532, 335 N.W.2d 390 (1983) (stating that federal case law interpreting provisions of federal statutes that are identical to the WCA "must be accorded considerable weight").

¶26 When WIS. STAT. § 427.104(1)(k) is applied to the facts of this case, it is clear that Burton's counterclaim is unsupported. First, it is undisputed that Plaza's counsel is an attorney. Second, there is no dispute that Plaza's counsel authorized the complaint against Burton by placing his signature on the document before filing. As the circuit court observed, "[d]espite Burton's forty-page brief and the veritable deluge of federal case law that accompanies it, Burton's first counterclaim fails upon th[e] very basic fact" that Plaza's counsel "placed his signature on the complaint."[5]

¶27 Accordingly, Plaza did not falsely represent that a communication was officially or formally approved, distributed, or consented to by an attorney. Any perception that the debt collection documents were authorized by an attorney was accurate, and Burton therefore has not alleged a violation of the WCA. The circuit court properly dismissed this counterclaim.

---

[5] Pursuant to WIS. STAT. § 802.05(2), by signing a complaint in Wisconsin, "an attorney … is certifying," among other things, "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … [t]he claims, defenses, and other legal contentions stated in the paper are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law" and "[t]he allegations and other factual contentions stated in the paper have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Sec. 802.05(2)(b), (c).

Burton argues, however, that the fact that an attorney signed the complaint is irrelevant because "a case filed by a lawyer who did not meaningfully review the case might not be frivolous; such a case may or may not be well-grounded in fact, but the violation of consumer protection laws occurs because the lawyer *has no way of actually knowing that*." Given that we have concluded above that the WCA does not support a meaningful involvement claim, the alleged issue that Burton presents does not exist in Wisconsin. As the circuit court explained, "By Burton's own admissions, under the current regime, frivolous complaints remain eminently sanctionable while meritorious complaints present no ethical quandaries whatsoever." And we, like the circuit court, "reject[] the notion that this sort of conduct is what [WIS. STAT. § 427.104](1)(k) aspired to prohibit or otherwise regulate."

## II. WIS. STAT. § 425.109

¶28    Burton's second counterclaim asserts that Plaza's complaint failed to meet the pleading requirements of WIS. STAT. § 425.109[6] "by not including the 'figures necessary' to compute the amount owed, and the specification of facts constituting the default."  According to Burton, "Plaza frequently files collection lawsuits in Wisconsin and has experienced collection counsel in Wisconsin," and therefore "Plaza knows or should know about the [WCA] and its requirements for collection of consumer debts in Wisconsin."  As a result, Burton contends that "Plaza intentionally and willfully failed to comply with the pleading requirements" because "compliance would 'require more information be transmitted to and

---

[6] As relevant here, WIS. STAT. § 425.109(1)(a)-(d) provides as follows:

> (1) A complaint by a merchant to enforce any cause of action arising from a consumer credit transaction shall include all of the following:
>
> (a) An identification of the consumer credit transaction.
>
> (b) A description of the collateral or leased goods, if any, which the merchant seeks to recover or has recovered.
>
> (c) A specification of the facts constituting the alleged default by the customer.
>
> (d)
>
> ….
>
> 2. If the consumer credit transaction is other than one pursuant to an open-end credit plan, the actual or estimated amount of U.S. dollars or of a named foreign currency alleged to be due to the merchant on a date certain after the customer's default, and a breakdown of all charges, interest, and payments, including any amount received from the sale of any collateral, occurring after this date certain.  This paragraph does not require a specific itemization, but the breakdown shall identify separately the amount due on a date certain, the total of all charges occurring after this date certain, the total of all interest occurring after this date certain, and the total of all payments occurring after this date certain.

reviewed by its attorneys, slowing down collections, and would mean their attorneys could not use form complaints generated by computers and only briefly reviewed by attorneys before filing, again slowing down collections and making collections costlier.'" Thus, because she asserts that Plaza's conduct was intentional and willful, Burton contends that she is entitled to damages under WIS. STAT. ch. 427.

¶29 Although Burton recognizes that the court in ***Beal v. Wyndham Vacation Resorts, Inc.***, 956 F. Supp. 2d 962, 969 (W.D. Wis. 2013), concluded that the failure to comply with the WCA's pleading requirements did not give rise to a claim for damages, she asserts that WIS. STAT. § 425.109 was amended following that decision to include § 425.109(4). *See* 2015 Wis. Act 155, § 10. Section 425.109(4) provides that "a complaint that fails to comply with this section does not constitute a violation of [WIS. STAT.] chs. 421 to 427, and shall not give rise to recovery of attorney fees under [WIS. STAT. §] 425.308, unless the customer establishes by a preponderance of the evidence that the failure to comply was willful or intentional." Burton argues that the amendments to § 425.109— specifically the addition of subsection (4)—demonstrate a legislative intent to expand remedies available for violations of the WCA's pleading requirements and "demonstrate[] the legislature was overruling the ***Beal*** court and making clear that debtors have a substantive right to the information in the complaint, a right

14

important enough that a willful or intentional failure to include that information was actionable."[7]

¶30 We conclude that Burton's second counterclaim also fails. As Plaza explained before the circuit court, Burton interprets the language in WIS. STAT. § 425.109(4) "to suggest that if you … prove that there is an intentional violation, … you can have a claim." That is not how our supreme court has interpreted this language. In *Kirsch*—a case considering whether a creditor's failure to send a notice of the right to cure default under WIS. STAT. ch. 425 before filing suit supports the imposition of damages under WIS. STAT. ch. 427, *see infra* ¶36—our supreme court addressed § 425.109(4) in a footnote. *Kirsch*, 386 Wis. 2d 388, ¶¶2, 19 n.8. The court recognized the "stark contrast" between "punishment for violations of § 427.104(1)" and "procedural errors such as pleading defects," the latter of which it explained "are treated much differently, as creditors face significantly less potential exposure under ch. 425 for such miscues." *Kirsch*, 386 Wis. 2d 388, ¶19.

¶31 With this contrast in mind, the supreme court noted that WIS. STAT. § 425.109(4) states "that failure to comply with pleading requirements is not a violation of [WIS. STAT.] chs. 421 to 427, but provid[es] that attorney fees under [WIS. STAT. §] 425.308 may be awarded if the debtor 'establishes by a

---

[7] We note that after briefing had completed in this case, Burton filed a second letter with this court under WIS. STAT. RULE 809.19(10), notifying us of "supplemental persuasive authority bearing on the issues in this case." The supplemental authority was a circuit court decision on a motion to dismiss in Washington County Case No. 2024CV342. We are not persuaded by the circuit court's decision in that case. It appears that the basis for the court's decision to deny the motion to dismiss the debtor's counterclaims was this court's decision in *Bank of America, N.A. v. Riffard*, 2025 WI App 17, 415 Wis. 2d 568, 19 N.W.3d 604, regarding the National Bank Act, which is not at issue in this case.

preponderance of the evidence that the failure to comply was willful or intentional.'" *Kirsch*, 386 Wis. 2d 388, ¶19 n.8. In other words, no damages may be awarded, and attorney fees may be awarded only if the debtor can establish that the noncompliance was willful or intentional. *See* § 425.109(4).[8]

¶32 Burton's allegations in her counterclaim do not sufficiently plead that Plaza willfully or intentionally failed to comply with the pleading requirements in WIS. STAT. § 425.109(1). Burton alleges that Plaza's conduct was "willful or intentional" because Plaza "is a serial filer in Wisconsin and knows or should know of the pleading requirements in Wisconsin" and because Plaza "has been a litigant in other cases where this exact issue was raised as a claim." In

---

[8] Burton argues that the footnote in *Security Finance v. Kirsch*, 2019 WI 42, 386 Wis. 2d 388, 926 N.W.2d 167, "did not create a rule regarding whether a violation of [WIS. STAT. §] 425.109 is actionable under [WIS. STAT.] ch[.] 427." (Formatting altered.) According to Burton, "[t]he scope or enforcement of [§] 425.109 was neither briefed nor argued by either side in the Supreme Court [in *Kirsch*], and the footnote does not undertake to do a detailed analysis of the language of [§] 425.109, the history of the statute including the legislature's significant changes, or the purpose of the statute." Burton argues that we should limit *Kirsch* to the specific question before the court in that case. If, however, *Kirsch* is precedential on this issue, Burton argues that it should be overruled "because it is inconsistent with both the purposes of the Act and existing case law." (Formatting altered.) To her credit, Burton recognizes that we are without authority to overrule decisions of our supreme court, and she makes this argument before us only to preserve the issue going forward.

We conclude that we are bound by our supreme court's interpretation of WIS. STAT. § 425.109(4), concluding that the "failure to comply with pleading requirements is not a violation of [WIS. STAT.] chs. 421 to 427" but may lead to an award of attorney fees where the plaintiff is able to establish willful or intentional conduct. *See Kirsch*, 386 Wis. 2d 388, ¶19 n.8; *but see Suburban St. Bank v. Squires*, 145 Wis. 2d 445, 447, 427 N.W.2d 393 (Ct. App. 1988) ("[W]e conclude that [WIS. STAT. §] 425.308 provides for an award of attorney's fees only when the provisions of the WCA are violated."). We cannot overrule language contained in a decision of our supreme court, *Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) ("The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case."), and we also may not "dismiss a statement in a prior case from [our supreme] court as dictum," *Zarder v. Humana Ins. Co.*, 2010 WI 35, ¶58, 324 Wis. 2d 325, 782 N.W.2d 682. Burton's arguments are best made before a different court. Therefore, we reject Burton's arguments that *Kirsch* is not controlling on this question.

support of the sufficiency of her allegations, Burton cites WIS. STAT. § 802.03(2), which provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." While that is true, Burton's allegations are conclusory and do not allege a plausible right to relief. Simply because Plaza has been a litigant in other cases and may have been aware of § 425.109(1)'s pleading requirements does not sufficiently allege that Plaza willfully or intentionally failed to comply with those requirements.

¶33 We agree with Plaza that such a broad statement would effectively swallow the rule. If the legislature had intended to award attorney fees every time a creditor or attorney, who is presumed to know the law, *see **Putnam v. Time Warner Cable***, 2002 WI 108, ¶13 n.4, 255 Wis. 2d 447, 649 N.W.2d 626, fails to comply with the pleading requirements in the WCA, the legislature would have said as much in the statute, rather than requiring that the debtor demonstrate willful or intentional conduct, *see* WIS. STAT. § 425.109(4). Plaza's prior litigation experience in other cases is insufficient, by itself, to support a reasonable inference that Plaza willfully or intentionally failed to comply with the WCA pleading requirements in the present case.

¶34 Case law provides that when a defendant argues that a complaint fails to meet the pleading requirements, the proper remedy is for the complaint to be dismissed without prejudice or for the plaintiff to be permitted to file an amended complaint. *See **Kirsch***, 386 Wis. 2d 388, ¶¶10, 16; ***Rsidue, L.L.C. v. Michaud***, 2006 WI App 164, ¶19, 295 Wis. 2d 585, 721 N.W.2d 718 ("[A]lthough a failure to comply with the pleading requirements under [WIS. STAT.] § 425.109(1) might hinder a creditor's ability to obtain a judgment against a consumer, *see* § 425.109(3), the creditor could typically cure such a pleading deficiency by amending the complaint or re-filing the action."). In this case, as

noted above, Plaza's complaint was voluntarily dismissed with prejudice. Burton received a proper result. The circuit court, therefore, did not err by dismissing Burton's counterclaim for a violation of § 425.109.[9]

### III. Failure to cure

¶35 Burton's final counterclaim argues that "Plaza violated the FDCPA by misrepresenting the legal status of the debt and engaging in harassing, abusive,

---

[9] Burton also argues that "[a]n interpretation of [WIS. STAT. §] 425.109(4) limiting the remedy to dismissal and/or an award of fees runs contrary to statutory construction principles." (Formatting altered.) Burton cites WIS. STAT. § 425.308, which allows attorney fees "[i]f the customer prevails in an action arising from a consumer transaction." According to Burton, "[a]n interpretation of [§] 425.109(4) that would allow *only* attorney's fees as a penalty for violations of [§] 425.109 would result in surplusage in the [WCA], since a customer who can prove a violation of the Act *already* gets attorney's fees" under § 425.308.

We disagree with Burton's assertion because it ignores the first part of WIS. STAT. § 425.109(4), which states that "a complaint that fails to comply with [§ 425.109] does not constitute a violation of [WIS. STAT.] chs. 421 to 427." In other words, Burton would not be able to prove a violation of the WCA simply by asserting a failure to comply with § 425.109, and, therefore, she would not "already" be entitled to attorney fees. She cannot prevail in an action by claiming a violation that does not exist. Burton would receive attorney fees only if she established willful or intentional conduct by the debt collector or prevailed on another claim. Thus, there is no surplusage created.

In support of her position, Burton relies heavily on *Footville State Bank v. Harvell*, 146 Wis. 2d 524, 432 N.W.2d 122 (Ct. App. 1988). In that case, we addressed the question of preverdict interest. *Id.* at 533-34. The debtor additionally argued that he was entitled to reasonable attorney fees under WIS. STAT. § 425.308(1). *Footville*, 146 Wis. 2d at 538. We determined that § 425.308(1) "allows the partially successful consumer to recover at least part of his or her attorney's fees even though the consumer did not win on all issues." *Footville*, 146 Wis. 2d at 539. We explained that "to be a prevailing party under the WCA, it is not necessary that one must either obtain an affirmative judgment in his or her favor or win the lawsuit in all respects." *Id.* at 540. Therefore, because the debtor in *Footville* "succeeded in substantially reducing his preverdict interest liability," which "was a significant issue in litigation," the debtor was entitled to attorney fees "incurred in presenting that defense." *Id.*

We are not persuaded that the holding in *Footville* applies here. Importantly, we cautioned in *Footville* that "[t]his is not to say that a customer who proves only a minor violation may recover attorney's fees." *Id.* at 539. Furthermore, the factual circumstances and the issues before this court are materially different from those in *Footville*.

unfair or unconscionable conduct when it filed suit on an accelerated debt without first ensuring that Burton got a notice of right to cure default," and by further "demanding payment when Burton had the right to go on paying the original creditor until she received a notice of assignment." Under the WCA, a debtor is entitled to "written notice of the alleged default and, if applicable, of the customer's right to cure any such default," within a 15-day cure period, before a debt collector can sue the debtor on an accelerated balance. WIS. STAT. §§ 425.104, 425.105.

¶36    This question was clearly addressed by our supreme court in ***Kirsch***. There, the court "consider[ed] whether a debtor who ha[d] been sued on a consumer credit transaction without first receiving a notice of right to cure default under [WIS. STAT.] ch. 425 may sue the creditor for damages under [WIS. STAT.] ch. 427." ***Kirsch***, 386 Wis. 2d 388, ¶2. Brian Kirsch argued that Security Finance violated WIS. STAT. § 427.104(1)(j) by failing to provide notice of the right to cure under WIS. STAT. §§ 425.104 and 425.105.[10] ***Kirsch***, 386 Wis. 2d 388, ¶11.

¶37    The ***Kirsch*** court disagreed, and it affirmed the dismissal of Kirsch's counterclaims. ***Id.***, ¶31. The court explained that "[t]he notice provision statute in [WIS. STAT.] ch. 425 does not provide for a penalty for noncompliance arising under any specific WCA subsection, other than the fact that a complaint is not to

---

[10] Kirsch also alleged a violation under WIS. STAT. § 427.104(1)(g), but the supreme court noted that Kirsch's counterclaim was "completely devoid of any allegation that Security '[c]ommunicate[d] with [Kirsch] … with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass [Kirsch].'" ***Kirsch***, 386 Wis. 2d 388, ¶13 (alterations in original; citation omitted). The court then stated that "the procedural defect of filing suit without first providing a notice of default and right to cure as outlined in [WIS. STAT.] ch. 425 does not create liability under § 427.104(1)(g)" absent allegations of frequent contact. ***Kirsch***, 386 Wis. 2d 388, ¶13.

be filed before notice is properly given." *Kirsch*, 386 Wis. 2d 388, ¶16. As a result, and reiterating that "[t]he parties d[id] not dispute that Kirsch took a loan from Security and agreed to timely pay back the loan with interest according to the loan agreement" and that the loan had been defaulted, the court "conclude[d] that Security's failure to send a notice of default and right to cure letter was merely a failure to comply with a procedural requirement that warranted dismissal of Security's action against Kirsch." *Id.*, ¶30.

¶38 In other words, Kirsch argued that Security essentially lost its right to enforce the loan agreement. *Id.*, ¶14. Our supreme court disagreed, stating that the creditor "had the 'right' to enforce compliance with the agreement," it simply "jumped the gun." *Id.* According to the court, "[s]uch a failure did not disrupt Security's right to payment from Kirsch"; thus, "[w]hile Kirsch was entitled to dismissal of Security's action against him, Kirsch's counterclaims fail[ed] to state a claim for additional relief under [WIS. STAT.] § 427.104(1)(j)." *Kirsch*, 386 Wis. 2d 388, ¶30.

¶39 While Burton's counterclaim concedes that under *Kirsch* a debtor may not seek damages under the WCA if he or she is sued before being provided notice of the right to cure, Burton attempts to bypass the WCA and *Kirsch* by suing under the FDCPA. The FDCPA prohibits falsely representing "the character, amount, or *legal status of any debt*." 15 U.S.C. § 1692e(2)(A) (emphasis added). Thus, Burton contends that Plaza misrepresented the legal status of the debt in violation of the FDCPA "by demanding payment in full from her before complying with the statute [in the WCA] that would let [Plaza] make that demand."

¶40    Burton cites ***Boerner v. LVNV Funding LLC***, 326 F. Supp. 3d 665 (E.D. Wis. 2018), in support of her position.  There, George Boerner alleged that LVNV Funding LLC and its counsel violated his rights under federal and state law when they sued him in Washington County Circuit Court on a defaulted credit card debt.  *Id.* at 671.  Boerner brought three counterclaims—strikingly similar to the counterclaims brought by Burton—against LVNV.  First, Boerner alleged that the defendants violated WIS. STAT. § 425.105(1) by filing suit without first giving notice of his right to cure the default and accelerating the maturity of the debt and that, by suing him, LVNV falsely represented that it had a right to do so, in violation of WIS. STAT. § 427.104(1)(j).  ***Boerner***, 326 F. Supp. 3d at 673. Second, based on those same allegations, Boerner argued that LVNV violated the FDCPA, 15 U.S.C. § 1692e(2)(A).  ***Boerner***, 326 F. Supp. 3d at 673.  Finally, Boerner asserted a meaningful involvement claim.  *Id.*

¶41    LVNV filed a motion to dismiss, arguing that Boerner had failed to state a viable claim for relief and challenging the court's subject matter jurisdiction.   *Id.* at 671-72.   As relevant here, the federal district court, in considering whether an action for damages could "be maintained based on a failure to give notice of the right to cure," acknowledged this court's holding on the issue, observing that Wisconsin courts interpret the WCA's right-to-cure requirement as a shield, while the FDCPA is a sword.  *Id.* at 680; *see also* ***Security Fin. v. Kirsch***, No. 2017AP1408, unpublished slip op., ¶13 (WI App Apr. 11, 2018), *aff'd*, ***Kirsch***, 386 Wis. 2d 388.  According to the federal court, "the ruling on remedies under the WCA is of no consequence for purposes of the FDCPA. The federal statute clearly affords a damages remedy for conduct that violates its proscriptions.  15 U.S.C. § 1692k(a)." ***Boerner***, 326 F. Supp. 3d at 680.  Thus, the

federal court determined that the state court's order dismissing Boerner's WCA counterclaim had no preclusive effect on the FDCPA claim. *Id.*

¶42    We reject Burton's convoluted argument—i.e., her attempt to avoid *Kirsch*'s holding by asserting that Plaza violated the FDCPA by violating the WCA. Instead, we conclude that the circuit court properly dismissed Burton's counterclaim because the failure to provide proper notice of the right to cure does not, by itself, give rise to a claim for damages under the FDCPA.

¶43    First, Burton's reliance on *Boerner* is misplaced. *Boerner* is nonbinding authority for this court. *See City of Weyauwega v. Wisconsin Cent. Ltd.*, 2018 WI App 65, ¶12 n.4, 384 Wis. 2d 382, 919 N.W.2d 609 ("Although federal court decisions, other than United States Supreme Court decisions on questions of federal law, do not bind us, we may follow federal court decisions that we find persuasive."). *Boerner* also was decided before our supreme court's decision in *Kirsch*. Finally, *Boerner* did not state that the FDCPA creates a cause of action for failing to provide a notice of the right to cure under the WCA. The case merely determined that the FDCPA claim was not precluded by the WCA state-law claim.

¶44    Second, based on our supreme court's holding in *Kirsch*, there is no basis to find that Plaza violated the FDCPA. As discussed, *Kirsch* determined that a creditor's right to payment is not "disrupt[ed]" by a creditor's failure to send a notice of the right to cure letter. *Kirsch*, 386 Wis. 2d 388, ¶30. Thus, the *Kirsch* court made clear that a creditor retains the *right* to collect on the debt. *See id.*, ¶¶15, 30. As a result, we agree with the circuit court that we "cannot find that Plaza intentionally misrepresented the status of Burton's debt, and subjecting Plaza to the same sort of liability normally reserved for actions that rise to

22

'harassing and abusive conduct' seems wholly inappropriate." In other words, given that the "legal status" of the debt is not impacted under the WCA by Plaza's failure to send a notice of the right to cure—i.e., the "right" remains—Plaza did not falsely represent the legal status of the debt under the FDCPA.[11]

¶45    Burton also alleges that she never received any notice of assignment, *see* WIS. STAT. § 422.409,[12] and, "as a result, Plaza violated the FDCPA by

---

[11] Plaza also cites federal case law holding that "[t]he FDCPA is not an enforcement mechanism for matters governed elsewhere by state and federal law." *See, e.g.*, **Bentrud v. Bowman**, 794 F.3d 871, 875 (7th Cir. 2015).

In response, Burton cites **Gearing v. Check Brokerage Corp.**, 233 F.3d 469 (7th Cir. 2000), for the proposition that "false allegations in a state court complaint are actionable under the FDCPA." But the holding in **Gearing** was based on a finding that the creditor "gave a false impression as to the legal status it enjoyed." **Id.** at 472. Again, based on **Kirsch**, Plaza's rights have not been defeated, so it did not give a false impression in this case. **Gearing** has no application here.

[12] WISCONSIN STAT. § 422.409 provides:

> (1) The customer is authorized to pay the assignor until the customer receives notification of assignment of the rights to payment pursuant to a consumer credit transaction and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the customer, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless the assignee does so the customer may pay the assignor.

(continued)

23

misrepresenting the character and legal status of the debt … by saying that Burton was required to pay [the debt] when by statute she was not required to do [so] absent a proper notice." According to Burton, "[a] notice of assignment is, if anything, more significant than a notice of right to cure default" because "[t]he assignee has *no* right to payment until that notice is sent, so filing [a] lawsuit and seeking a court order that Burton pay misrepresents the legal status of that debt."

¶46    We conclude that the *Kirsch* reasoning also applies to Plaza's failure to comply with the requirement of a notice of assignment under WIS. STAT. § 422.409. There is no language in § 422.409 addressing the debt collector's conduct or rights. Accordingly, the debt collector's rights are not impacted by operation of the statute. Section 422.409 merely provides what the customer "may" or is "authorized" to do if he or she does not receive the notice of assignment, which is to continue to pay the assignor. By operation of the

---

(2) The notification of assignment shall be in writing and addressed to the customer at the customer's address as stated in the contract, shall be accompanied by a copy of the contract or shall identify the contract, describe the goods or services, state the names of the assignor and the customer, the name and address of the assignee, the number, amount and due dates or periods of payments scheduled to repay the indebtedness and, except in the case of a transaction secured by a first lien mortgage or equivalent security interest for the purpose of the acquisition of a dwelling, the total of payments. A provision in the assigned contract that the customer waives or will not assert claims or defenses against the assignee under [WIS. STAT. §] 422.407(2) shall not be effective unless the notification of assignment also contains a clear and conspicuous statement that the customer has 12 months within which to notify the assignee in writing of any complaints, claims or defenses the customer may have against the assignor and that if the customer does not give such notice, the assignee or subsequent assignees will have the right to enforce the contract free of such claims or defenses subject to [WIS. STAT.] chs. 421 to 427.

assignment, the assignee—here, Plaza—continues to have the right to collect on the debt. Thus, Plaza did not misrepresent the legal status of the debt.

¶47    Furthermore, federal courts have held that an FDCPA violation that does not cause harm does not satisfy the injury in fact requirement sufficient to confer standing. *See **Casillas v. Madison Ave. Assocs.**,* 926 F.3d 329, 331-32 (7th Cir. 2019) ("Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions."); ***Markakos v. Medicredit, Inc.***, 997 F.3d 778, 780 (7th Cir. 2021) (collecting cases).

¶48    Here, Burton alleges that she sustained actual harm because "she didn't get a notice which would have let her avoid acceleration of the debt *entirely*: had she been given a proper notice of right to cure, she could have cured the default and gone on paying in installments." We note, first, that if Burton had received a notice of assignment, it would not have impacted her payment obligations. She could have cured the default by paying the assignee—i.e., Plaza. Regardless, Plaza voluntarily dismissed its complaint with prejudice. Thus, there is nothing further needed to enforce Burton's "right" to a notice of the right to cure and notice of assignment, and the harm that she suggests that she suffered does not exist. Accordingly, Burton's counterclaim was properly dismissed.

¶49    No costs for either party.

*By the Court.*—Order affirmed.

Recommended    for    publication    in    the    official    reports.